(No. 34087.—

LIBERTY NATIONAL BANK OF CHICAGO, Trustee, *et al.*, Appellees, *vs.* THE CITY OF CHICAGO, Appellant.

*Opinion filed November 26, 1956—Rehearing denied Jan. 23, 1957.*

JOHN C. MELANIPHY, Corporation Counsel, of Chicago, (SYDNEY R. DREBIN, HARRY H. POLLACK, and HAROLD M. NUDELMAN, of counsel,) for appellant.

MAURICE J. NATHANSON, of Chicago, (L. LOUIS KARTON, of counsel,) for appellees.

Mr. JUSTICE DAVIS delivered the opinion of the court:

The plaintiff bank, as trustee, and the individual plaintiffs, as beneficiaries of the trust, brought an action in the circuit court of Cook County against the defendant, the city of Chicago, asking the court to declare invalid the city's amendatory zoning ordinance of December 3, 1942, insofar as it rezoned plaintiffs' property from commercial to single-family residence use, and to restrain the enforcement of the provisions of the ordinance in question as to plaintiffs and their property.

The complaint also sought permission for the erection of a two-story building which would have two residential apartments on the second floor and two retail stores below. The individual plaintiffs, herein called plaintiffs, proposed to rent one of the stores and to conduct a delicatessen busi-

ness and cheese-processing plant in the other. The court referred the cause to a master to take proofs and certify the evidence to the court for decision. Upon such evidence the court entered judgment granting the relief requested. From this judgment the defendant appeals directly to this court, the trial court having certified that the validity of a municipal ordinance is involved which requires such action in the public interest.

The property in question consists of vacant lots located at the southeast corner of the intersection of Palmer Street and Harlem Avenue in the city of Chicago, having a frontage of 75 feet on Harlem and 200 feet on Palmer. It was acquired by plaintiffs on December 14, 1953. Harlem Avenue runs north and south. At the locality involved it is 77 feet wide and forms the westerly limits of the city of Chicago. Properties on the west side of Harlem Avenue lie in the village of Elmwood Park. Palmer Street, which is 66 feet wide, runs east and west and intersects Harlem at right angles. It continues westward into the village of Elmwood Park. West Dickens Avenue is the first east and west street south of Palmer, and West Armitage is the second. These streets also intersect Harlem and continue westward. Streets intersecting Harlem north of Palmer are Belden Avenue, Medill Avenue, and Grand Avenue in that order. The Milwaukee railroad crosses Harlem Avenue at grade between Medill and Grand. The street immediately east of Harlem is North Neva Avenue. It also intersects the east and west streets heretofore named.

Under the 1923 zoning ordinance of the city of Chicago, the block in which the subject property is located, as well as the next block to the south and the next two blocks to the north, were zoned for commercial use. By the amendatory ordinance passed in 1942 these blocks were rezoned to a residential classification. Since 1942 the second block to the south has been rezoned to business but the three blocks between Harlem and Neva from Dickens

to Medill including the property in question are all zoned residential at the present time.

Much of the evidence received at the trial concerned the uses obtaining in the neighborhood of the subject premises. From the testimony, maps, and photographs introduced, it appears that a gasoline filling station is located at the southwest corner of the intersection of Harlem and Palmer, in the village of Elmwood Park and directly across the street from the plaintiffs' property. On the northwest corner of the intersection, also in Elmwood Park, are a restaurant and milk depot. On the northeast corner directly across Palmer there is a converted residence, with a lawyer's office downstairs and living quarters above. On the east side of Harlem Avenue in the block in which the subject property is located, the uses are all residential, separated intermittently by vacant lots. These uses include a single-family residence immediately south of the plaintiffs' land and six other well improved residential properties. On the west side of Harlem Avenue in the same block in Elmwood Park there are 7 residences and 3 businesses including the gas station on the corner of Palmer and Harlem. Residential, interspersed with some business uses, appears to be typical of the west or Elmwood Park side of Harlem Avenue from Armitage north to Medill. This situation, however, does not prevail on the east side of Harlem Avenue in the city of Chicago. In the entire area bounded by Harlem Avenue on the west, Neva Avenue on the east, Medill Avenue on the north and Armitage Avenue on the south, the only business uses are the lawyer's office at the corner of Harlem and Palmer and a florist's shop on the east side of Harlem between Armitage and Dickens. This latter business use is in the block which is now zoned for business. There are some vacant lots in this area, the only uses are residential, and a number of homes are presently being built. The testimony

shows that some of the homes in this area have substantial value. For example, the two homes fronting on Neva Avenue just east of the property in question, and separated from it only by an alley, cost $32,500 each. Plaintiffs' expert witness characterized the neighborhood to the east of the subject property as residential with good quality homes.

In addition to evidence as to uses existing in nearby areas, plaintiffs proved that both sides of Harlem Avenue north of Grand Avenue were extensively devoted to business uses as far north as Diversy. This area begins about three blocks north of the subject property. There was also some testimony that both sides of Harlem Avenue were devoted to business in areas considerably to the south of the neighborhood involved.

On the question of relative values and highest and best use, plaintiffs called as an expert witness the real-estate broker who had sold the property to them. He testified that the highest and best use of the property is for business purposes; that as such it was worth $250 a foot; and that its value was $80 per foot if restricted to single-family residences. He further testified that in his opinion the proposed uses would not have a detrimental effect on the residences to the south, north and east. On cross-examination he testified that he and the plaintiffs knew that the property was zoned for residential purposes at the time it was purchased; that the purchase price was based on residential use; that if plaintiffs wanted to buy a similar piece of property in a business district at present the price would be $250 a foot; and that if the subject property had been zoned for business at the time it was purchased its value would not have been as high as $250 per foot. The real-estate broker who testified as an expert witness for the defendant was a resident of the neighborhood who had done considerable building there. He testified that the value

of the subject property for residential purposes was $140 per foot. This conflicting testimony is the only evidence in the record on the question of values.

Twenty-five residents of the neighborhood testified relative to the effects of the proposed uses on nearby residential properties; that such uses would cause increased traffic with greater parking difficulties and hazards to children, decreased property values, strong odors emanating from cheese processing, additional taxes, and garbage and refuse in the alley; and would lead to the opening of the residential neighborhood to other business uses. All testified that they had made substantial investments in their homes in reliance on the residential classification of the neighborhood. Two of these witnesses had prior experience with the offensive odors involved in connection with the manufacture of cheese. One of these had lived near plaintiffs' processing plant when it was located on Taylor Street. He testified that the plaintiffs there left empty cheese cans in the alley, which caused an offensive odor and induced mice and rats into that area; and that plaintiffs' operations had caused a foul odor. This testimony was not denied by plaintiffs, nor was any evidence offered to show that different conditions would prevail in the proposed new location. Defendant's witnesses further testified that there was no need for such a store or plant in the immediate area; that ample shopping facilities of all kinds are presently available in the areas to the north and south of the residential neighborhood in question; and that these shopping facilities are easily accessible to the people living there.

Plaintiffs contend that the amendatory ordinance as applied to their property is arbitrary, unreasonable, capricious, confiscatory and without substantial relation to the public health, safety, comfort, morals and general welfare. Where one assails the validity of such an ordinance it is incumbent upon him to prove by clear and affirmative evidence that the regulations imposed constitute arbitrary,

capricious and unreasonable municipal action and that there is no permissible interpretation which justified their adoption. (*First Nat. Bank of Lake Forest* v. *County of Lake,* 7 Ill.2d 213.) Where the proper authorities adopt a zoning ordinance pursuant to legislative grant, there is always a presumption in favor of its validity and this presumption may be overcome only by clear and convincing evidence. (*La Salle Nat. Bank* v. *City of Chicago,* 6 Ill.2d 22; *Trust Co. of Chicago* v. *City of Chicago,* 408 Ill. 91.) Among the facts and circumstances to be taken into consideration in determining whether a purported exercise of the police power in the form of a zoning ordinance is so unreasonable and confiscatory as to constitute an unlawful invasion of private rights are the character of the neighborhood, the zoning classification and use of nearby properties, the extent to which property values are diminished by the particular restrictions involved and the gain to the public as compared to the hardship imposed on the individual property owner. (*First Nat. Bank of Lake Forest* v. *County of Lake,* 7 Ill.2d 213; *Galt* v. *County of Cook,* 405 Ill. 396.) While the degree to which values are diminished by the restrictions imposed must always be considered in determining whether the alleged invasion of property rights is unreasonable and confiscatory, the highest and best use of the property immediately involved is but one factor to be considered, and the effect upon the value of other property must also be taken into account. (*People ex rel. Alco Deree Co.* v. *City of Chicago,* 2 Ill.2d 350, 358.) The fact alone that the property in question may be more valuable if zoned for other uses is not decisive, as this fact exists in nearly every case where the intensity with which property may be used is restricted by the zoning laws. (*First Nat. Bank of Lake Forest* v. *County of Lake,* 7 Ill.2d 213, 227; *Miller Brothers Lumber Co.* v. *City of Chicago,* 414 Ill. 162, 171.) Of paramount importance in determining

the validity or invalidity of the given classification is the question whether it is in conformity with existing uses and the zoning classification of nearby property. *La Salle Nat. Bank* v. *City of Chicago,* 6 Ill.2d 22, 29; *Trust Co. of Chicago* v. *City of Chicago,* 408 Ill. 91, 99 and 100.

On the record before us, it cannot be said that the proof clearly shows the ordinance to be confiscatory, or that it operates to deprive plaintiffs of their property without due process of law. The undisputed testimony is that plaintiffs knew the property was zoned for residence purposes when they bought it and that they paid a price consistent with its use for that purpose. The fact that its value will now be enhanced if a business use is permitted does not justify a conclusion that the ordinance is confiscatory. (*First Nat. Bank of Lake Forest* v. *County of Lake,* 7 Ill.2d 213, 227.) As in the case last cited, there is no proof in the record that the property is totally unsuited for the purpose for which it is zoned or that it is now worth any less for residence purposes than it was at the time it was bought. It cannot be said that the ordinance operates to substantially diminish the value of plaintiffs' property.

On the question of conformity with surrounding existing uses and the zoning classification of nearby property, the evidence shows that a compact residential neighborhood has been developed east of Harlem Avenue from Dickens Avenue on the south to Medill Avenue on the north. This area includes not only the three square blocks bound by Neva Avenue on the east but considerable territory east of Neva as well. Though the block in which the subject property is located and the two blocks north of it were zoned for business from 1923 to 1942, only one business use developed and that was in the form of a lawyer's office in a converted residence. The present zoning classification adopted in 1942 reflects the development of the property in the area to residential uses in the intervening years. A change in a zoning classification which brings it

into harmony with property use and development and serves to protect existing uses and values usually represents a desirable zoning practice. (*La Salle Nat. Bank* v. *City of Chicago*, 6 Ill.2d 22, 29 and 30.) It cannot be said that the changes made by the ordinance of 1942 were arbitrary and without foundation in fact.

Plaintiffs would characterize their property as business or commercial because of the uses obtaining across the street in Elmwood Park. Some business uses have developed on the west side of Harlem Avenue from Armitage north to Medill, but these are interspersed with residences and vacant property. Under the facts of this case we do not consider the zoning classification adopted by the city of Chicago for properties on the east side of Harlem and eastward unreasonable. While we held in *Forbes* v. *Hubbard*, 348 Ill. 166, that it may be undesirable under certain circumstances to zone property on one side of a main artery of travel for business and property across the street for residence purposes, this court has also recognized that such zoning may be reasonable and proper where an extensive area adjacent to the property fronting on the thoroughfare has been zoned and developed for residential use along with the property on the street itself, and where due consideration is given to the width and character of the road and the traffic it carries. (*La Salle Nat. Bank* v. *City of Chicago*, 6 Ill.2d 22, 30; *Krom* v. *City of Elmhurst*, 8 Ill.2d 104, 111, and *Mundelein Estates, Inc.* v. *Village of Mundelein*, 409 Ill. 291, 296.) Upon consideration of all the pertinent facts, we cannot say that the uses obtaining in Elmwood Park render the Chicago zoning classifications unreasonable.

Under the evidence, the most that can possibly be said for the plaintiffs' case, is that it presents a fairly debatable question as to whether the property on the east side of Harlem Avenue should be characterized by the extensive residential area to the east or by the business uses on the

west side of the street. Under these circumstances, the question should be determined by the city council and not by the courts. *La Salle Nat. Bank* v. *City of Chicago,* 6 Ill.2d 22, 31; *Mundelein Estates* v. *Village of Mundelein,* 409 Ill. 291, 296; *Neef* v. *City of Springfield,* 380 Ill. 275, 283.

The judgment of the circuit court of Cook County is reversed.

*Judgment reversed.*