Alton W. Moeller, Appellee, v. City of Moline, a Municipal Corporation, Appellant.

Gen. No. 64–28.

Third District.

July 16, 1964.

Hubbard B. Neighbour, of Moline, for appellant.

Stewart R. Winstein, and Harrison H. Kavensky, of Rock Island (Harrison H. Kavensky, of counsel), for appellee.

ROETH, J.

This is an action for declaratory judgment brought by the plaintiff, Alton W. Moeller, against the City of Moline seeking a declaration that the R–4 two and single family residential zoning classification of his property was void and invalid, and seeking a declaration that he has the right to use the property for a truck terminal under an M–1 industrial classification. The trial court granted the relief requested, and entered the declaratory judgment from which this appeal is taken by the defendant, City of Moline.

The plaintiff's property is a tract of land in the City of Moline approximately 115 feet wide fronting

on River Drive to the north, and with a depth of 225 feet on the east side, and 200 feet on the west. River Drive is as its name connotes a drive on the bank of the Mississippi River but is one of the ten most heavily traveled streets in the City of Moline with a 1960 average daily traffic count of 7,000 to 8,000 vehicles per day, although a number of other streets in the city have heavier traffic counts. River Drive is only 25 feet wide from curb to curb.

Immediately abutting the plaintiff's property to the rear, or south, is a railroad embankment, then a 200 to 250 foot railroad right-of-way, upon which eleven trains of the Rock Island Railroad run daily. Directly across River Drive to the north of plaintiff's property is the Mississippi River; the view of the river from plaintiff's is appropriately described as a fine view.

The plaintiff's property is located near the center of a compact, contiguous R-4 two and single family residential district extending for six blocks east and west along the River Drive north of the railroad right-of-way between 39th and 45th Streets. The plaintiff's property, and all others located in the R-4 zone, have a fine view of the river. The entire six-block area is built up solidly residential, with very few vacant lots. The homes in this area are generally well maintained, and with few exceptions, are well set back from the road.

River Drive west of 34th Street is primarily industrial, of all types. Commencing at 34th Street and moving east toward the R-4 area in question are the following (situated in an M-2 industrially zoned district): Western Transportation Company, a truck terminal, is located on 34th Street to the south of River Drive; in the 3500 block is Sportland Marine; in the 3600 block is a septic tank and concrete step company; 3700 block, a die making company, a TV service and a grinding service; 3800 block, a die casting company and a foundry; 3900 block, the Naval Armory;

and then the subject six-block area. The Armory is 1050 to 1200 feet from the plaintiff's property and is separated from it by 13 residences.

Within the R–4 area there are six residences east of the plaintiff's property along River Drive covering a distance of approximately 750 feet—then proceeding east along River Drive, in an M–2 zoned district, are located the following; Harris Business Forms office; Axel Carlson Construction Company; several brick residences; Lincoln-Dixie Freight Company, a truck terminal, which is four or five blocks east of the plaintiff's property; several more residences; then a concrete step company; Henry Engineering Company; another trucking company; a fish market; Reed Fire Brick Company; a distributing plant across the railroad tracks; and, finally, at the corner of 55th Street, a motor cargo truck terminal.

The plaintiff's property is presently unoccupied, but has upon it at the rear a very small old house and shed. The house was last occupied about eight years ago.

Moline's first zoning ordinance was adopted in 1929, and under it the R–4 area in question was zoned industrial, as was the entire Moline river front. Under this zoning, the entire river front to the east and west of the six block area in question was developed industrially, but the area in question did not so develop, but rather developed residentially even though it was zoned industrial for 29 years. In 1958, as a result of two or three years of intensive study by professional engineers and a citizens advisory committee numbering about 100 persons, a master plan was adopted for the city. Out of this grew a new comprehensive zoning ordinance which was adopted by the City of Moline in 1958, and under this ordinance the six-block area was zoned R–4, and has remained so zoned up to this day.

The plaintiff bought the property in December, 1961, while it was so zoned and was aware of the residential restriction when he bought it.

The closest commercial establishment to the west of the plaintiff's property, the Armory, is 1050 to 1200 feet away. The closest such establishment to the east, the Harris Business Forms office is 750 feet away. No commercial or industrial establishment east or west along River Drive can even be seen from the plaintiff's property. The Mississippi River abuts the entire area to the north. To the south across the railroad right-of-way from the plaintiff's property is an industrially zoned area, but further to the east and across the right-of-way is a continuation of the R-4 zoning which adjoins the six-block area in question, and which is developed residentially. There is no means of access from the plaintiff's property to the industrially zoned property to the south. The closest railroad crossings are at 41st Street, 3½ blocks west, or 55th Street, 10½ blocks east.

The closest commercial or industrial establishment to the south is the Sandburg Foundry, which is straight south of the plaintiff's property and 20 to 30 feet south of the south line of the railroad right-of-way and thus some 225 to 280 feet separated from the nearest part of the plaintiff's property. East of the Sandburg Foundry is the Moline Forge Plant, located between 41st and 42nd Streets, and between Second and Fourth Avenues, and the closest part of the forge building to the plaintiff's property is some 250 to 300 feet away. The Lenox Photo Art Development building is located east of the Sandburg Foundry, and is about the same distance from the plaintiff's property as the forge building. These are the closest commercial or industrial establishments to any part of the plaintiff's property. They are all separated from plaintiff's property by the railroad right-of-way, across which there is no access.

■■■■■■■■■

In the R–4 area in question, there are six homes east of the plaintiff's property, and 13 homes west of it, with no commercial establishments or nonconforming uses whatever in the six-block area.

The homes in the R–4 area adjacent to plaintiff's property are not run down, but are well kept and well maintained, and none are vacant. In the immediate area, the following improvements have been made in the last two years: The residence six doors east of the plaintiff had new siding added; five doors east, a new family room and new siding; four doors east, modernization and remodeling of the interior, complete wiring job, new roof, and a new garage added; three doors east, remodeled front porch, new 3-car garage added; two doors east, rewired and new roof; next door to the east, a 15 x 28 foot addition with basement. Next door to the west, remodeled interior; two doors west, new home completed and first occupied only 30 to 40 days prior to the trial in this cause; three doors west, the former home of owner of the new residence, recently sold; four doors west, remodeled second floor; five doors west, at the 41st Street intersection, completely remodeled, new heating plant, new basement, new garage.

The owner of the residence adjacent to the plaintiff's property on the east testified that he relied on the R–4 zoning when he constructed his extensive addition in 1961, and stated that he objected to having a truck terminal next door, as did the owner of the home to the west.

The plaintiff proposes to construct a 60 x 200 foot truck terminal building on his property, which only has an average depth of 212 feet; such a building would block the river view of the residences next door.

A year or two before the plaintiff purchased the property, Lloyd Grantz, the owner of the residence to the east, attempted to purchase the subject property from the former owners for development as residential

384

property, and offered $6,500, further stating that he would meet any offer. For several years there was a "For Sale" sign on the lot, and many persons and passersby stopped at the Grantz home and inquired about the property, although the plaintiff denied ever having received any inquiries about it.

William Luhman, the Moline city planner, testified that in his opinion, the development of the plaintiff's property as a truck terminal would increase the vehicular usage of River Drive, a narrow 25-foot street with rather severe curves in the immediate vicinity of the plaintiff's property and that an over-the-road tractor-trailer unit would have a difficult time negotiating a turn in and out of the plaintiff's property onto River Drive. This statement was corroborated by another resident of River Drive, who stated that there were times when traffic on River Drive had been lined up for three blocks waiting for trucks to turn in and out of the Lincoln-Dixie Terminal, which is four to five blocks east of the plaintiff's property.

Mr. Luhman, also, stated that he believed the railroad right-of-way was a good buffer for the industrial district to the south of the plaintiff's property; that the six-block R-4 area is a neighborhood in itself, and the houses in the area are not affected by the zoning east or west; that the plaintiff's property is suitable for residential zoning and should continue to be so zoned.

Defendant's real estate expert stated that the best use of the plaintiff's property was residential, taking into consideration the surrounding neighborhood, the six-block residential area, and the river. Even the plaintiff's real estate expert stated: "For people who love the river, the plaintiff's property would be wonderful for residential purposes." The neighbors on the east and west share this opinion.

Plaintiff's real estate expert, Mr. Vizard, stated that the value of plaintiff's property as zoned R-4

was $6,800, and would be worth $17,000 to $20,000 if zoned industrial. The plaintiff paid $9,500 for the property in December, 1961. Vizard first stated that other owners in the R-4 area would not be affected as to the value of their homes if plaintiff were permitted to build a truck terminal on the basis that they were so close to the railroad anyway, but on cross-examination he admitted that it would decrease the saleability of the adjacent properties.

Defendant's real estate expert, Mr. Moorhusen, testified that the value of the plaintiff's property under R-4 zoning was $7,000 to $7,500, and would be worth about $12,000 if zoned industrial. He stated that the Grantz home, adjacent to the east, was worth $22,500, and would be depreciated in value by $5,000 or $6,000 if a truck terminal were built next door. He stated that the home next door to the west was worth $11,000 to $11,500, and would be depreciated in value by $1,650 to $2,300 if the plaintiff's request were granted.

River Drive is an extension of 3rd Avenue in the City of Moline. Commencing at the west city limits of Moline, 3rd Avenue is some distance south of the river. It angles to the Northeast up to about 25th Street where it becomes River Drive and then River Drive extends along the banks of the Mississippi River all the way to the east city limits of Moline. The City of Moline has a plan to develop the area between River Drive and the river from 34th Street on the west to the city limits on the east, as a park, boating facilities, recreation areas and scenic areas. The city has already acquired riparian rights between 34th Street and 35th Street and has commenced a fill of this area for park purposes pursuant to the plan.

So far as the traffic on River Drive is concerned, the city has established a one-way drive system for 4th Avenue and 5th Avenue from the west city limits to 34th Street and expects to extend this system to

the east city limits at 55th Street. This is expected to reduce the traffic on River Drive.

■ Zoning is primarily a legislative function, subject to court review only for the purpose of determining whether the power, as exercised, involves an undue invasion of private rights without a reasonable justification in relation to the health, safety, morals or general welfare of the public. Zoning ordinances are presumed to be valid and the burden is upon the person seeking to establish their invalidity to do so by clear and convincing evidence. Where there is a fairly debatable question as to the classification made or the action taken, the question should be resolved in favor of the zoning agency. These principles are so well established that no citation of authorities is necessary. In fact counsel for both parties agree that these principles are well established. Likewise well established, are the factors which are to be taken into consideration in determining the validity or invalidity of a zoning ordinance.

■ Certain facts stand out in this record like beacon lights to light the way in its decision. The record shows that for 29 years when the area, now zoned as residential, was zoned for industrial use, no attempt was made to develop the area for industrial purposes. To the contrary it was developed for residential purposes and continues to be so developed by major improvements to existing homes and the building of at least one new home just last year. The area has remained a compact, homogeneous residential area and it is not surprising that the City of Moline in adopting its comprehensive zoning plan of 1958 would seek to preserve its character. Plaintiff purchased his property with full knowledge of the zoning restrictions. While we are not unmindful of the rule that this does not create any estoppel against him, we also think it is reasonably clear that the purchase

387

was made with the very purpose in mind that he now seeks to accomplish by this suit. The claim by plaintiff that a continuation of residential classification will inflict financial hardship on plaintiff is therefore largely self created and comes with bad grace. We would be unrealistic to say the least, if we were to say that the erection of a truck terminal in almost the center of a 6-block residential area would not adversely affect the residential property in the whole area. It is much more realistic to believe that this would be the first step toward a gradual erosion of the remainder of the area.

█ █ It has been repeatedly held by the Supreme Court as follows:

"Of paramount importance in determining the validity or invalidity of the given classification is the question whether it is in conformity with existing uses and the zoning classification of nearby property." Liberty Nat. Bank of Chicago v. City of Chicago, 10 Ill2d 137, 139 NE2d 235; Wehrmeister v. County of Du Page, 10 Ill2d 604, 141 NE2d 26; Sutter v. Village of Mundelein, 27 Ill2d 589, 190 NE2d 321.

If we follow this pronouncement it is clear that the legislative judgment of the City of Moline is conclusive and that plaintiff has failed to overcome the presumption of validity.

Accordingly the judgment of the Circuit Court of Rock Island County is reversed with directions to enter a declaratory judgment order affirming the action of the City of Moline in denying reclassification of plaintiff's property from R–4 to M–1.

Reversed and remanded.

CULBERTSON, P. J. and SCHEINEMAN, J., concur.