Marvin Reskin and Shirley Reskin, Plaintiffs-Appellees, v. City of Northlake, a Municipal Corporation, Defendant-Appellant.

Gen. No. 49,767.

First District, Fourth Division.

January 20, 1965.

Edwin R. Armstrong, of Chicago, for appellant.

Nathenson & Gussin, of Chicago, for appellees.

MR. JUSTICE DRUCKER delivered the opinion of the court.

The defendant, City of Northlake, appeals from a judgment declaring its zoning ordinance unreasonable and void as regards plaintiffs' property.[1]

---

[1] Defendant appealed directly to the Supreme Court and the appeal was transferred to this court pursuant to the policy enunciated in First Nat. Bank & Trust Co. v. Evanston, 30 Ill2d 479,

The plaintiffs desired to erect an automotive service station on the property which has been made the subject matter of this litigation. Prior to the commencement of this suit, plaintiffs' application for a variation was rejected by defendant's Zoning Board of Appeals and by its City Council. Plaintiffs commenced a declaratory judgment action on November 28, 1961, asking the court to declare the zoning ordinance invalid insofar as it prohibited plaintiff from erecting the gasoline station.

Lot 32 of plaintiffs' property fronts on the northeast corner of North Avenue and Railroad Avenue, and lots 31 and 30 adjoin it to the east, facing on North Avenue. Lot 32 is presently zoned as a "Class B" manufacturing use, which use permits a gasoline station. Lots 31 and 30 are zoned residential and a gasoline facility is not permitted. Each lot is 60 feet wide and 125 feet deep; lots 30 and 32 are vacant, lot 31 is improved with a one-story residence. Plaintiffs acquired title to the property about five months before commencement of the declaratory judgment proceeding. Plaintiffs had given the American Oil Company an option to purchase the three lots for $50,000 conditioned on their use as a gasoline station.

The findings of the master indicated that:

The northeast corner of North and Railroad Avenues, (lot 32) and north on Railroad Avenue on the east side of Railroad Avenue for 300 feet is vacant; the northwest corner of North and Railroad Avenues, having a 300 foot frontage on North Avenue and running northerly along Railroad Avenue about 200 feet until cut off by a railroad embankment, is also vacant; both of these areas are classified "Class B"

---

197 NE2d 705, in which the court ruled that zoning cases affecting the classification of a single subject property did not present a "substantial constitutional question" to warrant direct appeal to the Supreme Court.

manufacturing; the southwest corner of North and Railroad Avenues, having a frontage of approximately 300 feet on North Avenue and extending southerly about 500 to 600 feet, abutting the railroad embankment, is vacant and zoned "Class B" manufacturing; and the southeast corner of North and Railroad Avenues and extending east for one block is zoned "Class A" manufacturing and on it is situated a bowling alley and a parking lot utilized by patrons of the alley.[2] Turning from the zoning and use of the property surrounding the intersection, the findings of the master showed that within the one block east of the subject property there are six single family houses on the north side of North Avenue; that northward of the subject property is a large manufacturing district which includes the "large plant" of the Automatic Electric Company;[3] that northeast and a short distance to the rear of the subject property are three residences which front on Westward Ho Drive; and that west of the railroad abutment are manufacturing uses and the Tri-State Tollway. The findings of the master indicated that the uses and zoning of the nearby area are oriented toward a commercial-manufacturing use and/or development.

The master concluded that the zoning ordinance was invalid insofar as it prevented the use of the east 120 feet (lots 31 and 30) for a filling station. The Circuit Court adopted the master's recommendation that judgment be rendered for the plaintiffs.

According to the master's report, his conclusions were based on the following: the financial advantage which would accrue to plaintiffs; the disadvantage to

---

[2] The bowling alley and parking facility covered the frontage of an entire block on the south side of North Avenue.

[3] The master further found that there were "many employees" in these plants who used the private road (Railroad Avenue) for ingress and egress to their places of employment.

187

the area of the subject property related only to the immediate block and not to the entire community; the depreciation in value of the proximate dwellings was considered nonexistent or nominal by plaintiffs' witnesses and of varying amounts by defendant's witnesses;[4] the west 60 feet of the subject property was zoned to permit a filling station and accordingly all of the depreciating factors attributable to a filling station would exist by virtue of the presently permitted use on the west 60 feet; the area of the subject property was presently, by zoning ordinance and actual use, burdened with commercial and manufacturing uses; the proposed use of the property for a filling station was compatible with public welfare and the extension of the use would not materially change the burdens which the residences in the area are presently shouldering.

From our examination of the evidence (which included an aerial photograph submitted in response to this court's request for a plat of the area, and stipulated as accurate by the parties) it is apparent that a comprehensive, almost fully built-up, residential development encompassing approximately 200 residences extends for three blocks [5] east of lot 32, and from North Avenue north for four blocks. The

[4] According to the master's report, one of the defendant's experts testified that one residence would be "depreciated in value approximately $1,500, and residences to the east to Harvard Avenue about $500 each; two residences to rear on Westward Ho Drive which adjoin subject property would be depreciated only a small amount because their lots are long." The other expert stated that there would be depreciation running for a full city block and then to the next tier of lots in diminishing ratio and that depreciation would be 33% of the value, if saleable at all; that the same depreciation applied to a half-dozen houses on Westward Ho Drive.

[5] The three block measurement on the north side of North Avenue is the equivalent of six blocks on the south side of the thoroughfare.

perimeters of this development are a major thorough-fare, North Avenue on the south, and a private road, Railroad Avenue, on the west and the manufacturing plant on the north. The installation of the private road from North Avenue to the plant created a very narrow strip of property (about 60 feet in width) zoned for manufacturing on the east side of the private road, which strip includes lot 32 and runs north of it, with its eastern boundary forming a straight line from North Avenue to the manufacturing plant. All the property east of this strip is zoned and developed "residential."

■■ The master found that the proposed use of lots 30 and 31 would not constitute "spot zoning." [6] However, we believe that the effect of declaring defendant's residential zoning ordinance invalid as it applies to lots 30 and 31 would have the same consequence as "spot zoning" by permitting this two-lot encroachment of the manufacturing zone into an otherwise solid and regularly rectangular residential zone. To constitute spot zoning (in the sense of an illegal exercise of power on the part of a zoning authority) the two requisites which must coexist are: a change of zone applicable only to a small area, and a change which is out of harmony with comprehensive planning for the good of the community as a whole. 101 CJS Zoning § 34; 51 ALR2d 267; Dunham, Modern Real Estate Transactions, 74-84 (2d ed 1958). This type of zoning ploy is generally viewed with disfavor:

> . . . because . . . such practice has been employed in order to aid some one owner or parcel or some one small area, rather than being en-

---

[6] The master reasoned: ". . . there is no attempt to introduce a use which would be alien to, or an intrusion, in the area, since the west 60 feet of the subject property are presently zoned so that a gasoline station may be built and operated on this parcel."

acted for the general welfare, safety, health and well-being of the entire community.

(Metzenbaum, The Law of Zoning, ch X–m–5.)

■ Defendant's zoning ordinance and consequent classification of the subject property (lots 31 and 30) bears a reasonable relation to the public health, safety and comfort of the City of Northlake. The subject property had been zoned residential since 1954; moreover, the 1956 zoning amendments perpetuated this classification.[7] Plaintiffs' acquisition of the property in 1961 must be considered to have been made with knowledge of these enactments by the City. No evidence was adduced to indicate that the subject property's value has been diminished.[8] The possibility that rezoning the property might readily double its monetary value does not mean that the zoning ordinance is confiscatory. This has been discussed in Elmhurst Nat. Bank v. City of Chicago, 22 Ill2d 396, at page 402, 176 NE2d 771:

> Viewing the instant case in the light of these guiding considerations, it is evident that the subject property has been residential since the original zoning in 1923, that the suitability of this use was reviewed and perpetuated by the municipal authorities in 1942 and again in 1957, and that plaintiff purchased the property with full knowledge that it was zoned residential. Although there is no evidence of plaintiff's investment, it is not unreasonable to suppose that the price paid

[7] The care with which the community has undertaken to plan its land development and the lack of evidence of community need for the use proposed by plaintiff were recognized as factors to be considered in evaluating a zoning ordinance, Hoffmann v. City of Waukegan, 51 Ill App2d 241, 244, 201 NE2d 177.

[8] There was extensive testimony that the value of lots 32, 31 and 30 would be enhanced if zoned to permit a service station.

was commensurate with that purpose. Under these circumstances, it can hardly be found that the ordinance has diminished the value of plaintiff's property or is confiscatory. Nor does it become confiscatory by virtue of plaintiff's evidence that the property as zoned residential has a value of $200 per front foot, whereas if it is rezoned commercial it will bring $400 a front foot, for such an increase in value exists in most cases where the restriction on intensity of use is removed, and is not decisive of the validity of the ordinance. People ex rel. Alco Deree Co. v. City of Chicago, 2 Ill2d 350, 358.

(See also Bolger v. Village of Mount Prospect, 10 Ill2d 596, 602, 141 NE2d 22.)

■ Plaintiff's witness, Charles Reskin,[9] a real estate subdivider, builder, developer, and an incorporator of Northlake, testified that conditions have not changed substantially in the past decade. He testified that:

I built the residences to the east of the subject property on North Avenue. It is my feeling as a land developer, divider and planner that at that time it was the best use for that property. North Avenue at that time was an arterial highway. It was one of the main arteries between the suburbs and the City of Chicago. Other than the increase in traffic, the situation when I built those residences was substantially the same as it is now.

. . . . . .

At the time I built the homes to the east of the subject property the zoning then, as it is now,

---

[9] A brother of plaintiff, Marvin Reskin, and a beneficiary under trusts which conveyed the subject property to the plaintiffs.

was for single-family residences. When I sold those homes, I represented to the people that, in fact, the zoning was single-family residences.

While the witness suggests that traffic on North Avenue has increased, no figures are given anywhere in the testimony of any of the witnesses to measure the change. Conceding that North Avenue traffic counts are up, this is not, in itself, a sufficient justification for a zoning change. As indicated in Elmhurst, supra, at page 404:

> Although heavy traffic has been deemed a factor militating against residential uses (Tews v. Woolhiser, 352 Ill 212; Petropolous v. City of Chicago, 5 Ill2d 270), the fact that a street is a main artery of traffic, as in the instant case, is not conclusive that it is most suitable for commercial use. (La Salle Nat. Bank v. City of Chicago, 4 Ill2d 253; Herzog Building Corp. v. City of Des Plaines, 3 Ill2d 206.) In the La Salle National Bank case the court sustained residential zoning on property at the intersection of two main thoroughfares on which there were intersecting bus lines, and in the Herzog case the court sustained residential zoning for property fronting on a State highway.

The traffic congestion problem is paradoxically mollified and complicated by the fact that a two-way service road parallels North Avenue [10] and is accessible only to west bound traffic on North Avenue. The entrance to the service drive is at a point 215 feet east of the easternmost boundary of the subject property.

---

[10] The distance between the north side of North Avenue and the southern boundary of the subject property is 41.5 feet. The area includes, from south to north, a 9 foot median strip, an 18.6 foot service drive, and another 13.8 foot median.

The western terminus of the service road is about 40 feet east of Railroad Avenue. Plaintiffs' witness, Alfred C. Stier, intimated that there was an unwritten commitment from Automatic Electric Company that it would permit a driveway from Railroad Avenue. The State Department of Highways indicated that it would grant driveway permits onto North Avenue.[11] There is a traffic control signal at the intersection of North and Railroad Avenues.

It cannot be disputed that the installation of a gasoline station on the subject property would substantially increase traffic on the service road and none of the proposed additional means of ingress and egress would necessarily reduce such congestion. On the other hand, it is arguable that the service facility was created to lessen the congestion on North Avenue, to promote automobile access to residents whose homes fronted on the service road, and to insure safety. To permit extensive traffic to use the service road on the residential side of North Avenue would thus be contrary to the purposes of the service drive. The matter would be further complicated if the private road were to be altered, moved or removed. Since the record discloses that the agreements as to ingress and egress to the service road pertain only to a three lot station, it does not seem likely that the same conditions would obtain if the station were built only on lot 32.

The subject property (lots 30 and 31) is characterized by the homogeneous, compact and uniform resi-

---

[11] The Department stated that it would grant an access permit to: "construct two (2) 35 foot wide driveways and one (1) 35 foot opening in the median which separates the north service drive from the main roadway. . . . This opening can be constructed at any point on your frontage on North Avenue east of the end of the service drive. . . . We . . . recommend that you . . . start at the west end of the service drive and r[u]n eastward therefrom."

dential area to the east and northeast [12] and not by the commercial and manufacturing areas. The residential area has been completely developed in conformity with the zoning ordinance whereas the commercial properties to the west of Railroad Avenue on both the north and south sides of this thoroughfare are vacant. East of Railroad Avenue on the south side of North Avenue are a bowling alley and parking facility. However, east of the bowling alley there is practically no development in an extensive area zoned for commercial use. Plaintiffs' witness Bendt testified:

> On the south side of North Avenue running east from the bowling alley, there are—it's about 90% vacant along the commerical frontage on North Avenue. There is one improvement east of the bowling alley. I think it's a tavern and apartment combination, rather an old building. Then running east from there, there are no improvements until you reach Wolf Road, and there is a service station on that corner.

The problem of zoning demarcation was treated in Williams v. Village of Schiller Park, 9 Ill2d 596, where the court said at page 598, 138 NE2d 500:

> "It is axiomatic that zoning must begin somewhere and end somewhere," (DeBartolo v. Village of Oak Park, 396 Ill 404, 411;) so, even though property touches on industrially zoned areas, a residential classification is not thereby necessarily precluded. Because of the large residential area adjoining the instant property, the fact that the only means of access to the prop-

---

[12] On the north side of North Avenue at the following intervals from the block which includes the subject property are: one block, a real estate office; two blocks, a barbershop; three blocks, Bank of Northlake and a food store.

erty is through that area, the evidence of loss in market value likely to result to nearby residences from the requested classification change, and the feasibility of using the property for residential purposes, we cannot say the village acted unreasonably in drawing the line where it did.

(See also Mundelein Estates, Inc. v. Village of Mundelein, 409 Ill 291, 294, 99 NE2d 144.) Moreover, it is important to note the value ascribed to segregating residential districts. In City of Aurora v. Burns, 319 Ill 84, at page 94, 149 NE 784 the court said:

> The segregation of industries, commercial pursuits and dwellings to particular districts in a city, when exercised reasonably, may bear a rational relation to the health, morals, safety and general welfare of the community. The establishment of such districts or zones may, among other things, prevent congestion of population, secure quiet residence districts, expedite local transportation, and facilitate the suppression of disorder, the extinguishment of fires and the enforcement of traffic and sanitary regulations. The danger of fire and the risk of contagion are often lessened by the exclusion of stores and factories from areas devoted to residences, and, in consequence, the safety and health of the community may be promoted. These objects, among others, are attained by the exercise of the police power.

The findings for plaintiffs in the trial court are predicated on the reasoning that since a gasoline station could be erected on lot 32, no detriment to the community would occur by reason of an extension of the station to three lots. Throughout the proceedings below and in the briefs the three lots are referred to as "the subject property." However, since lot 32

195

is already zoned for manufacturing (a use which would permit a service station) plaintiffs actually seek a finding that the zoning ordinance is invalid only as it applies to lots 30 and 31. The fact that the three lots are owned by the same persons is of no legal significance. Plaintiffs purchased these with full knowledge of their zoning and the homeowners east of the three lots had been assured by Charles Reskin that "the zoning was single-family residences." The question then is whether the zoning of lots 30 and 31 should be changed so that a recent purchaser can profit thereby while the comprehensive plan of zoning is eroded to the detriment of the community and without any reasonable relation to the public health, safety, morals or general welfare.

 A zoning ordinance is presumed valid: the presumption may be overcome only by clear and convincing evidence and the burden of proof is on the plaintiff. La Salle Nat. Bank of Chicago v. County of Cook, 12 Ill2d 40, 46, 145 NE2d 65; Vedovell v. City of Northlake, 22 Ill2d 611, 614, 177 NE2d 124; Moeller v. City of Moline, 50 Ill App2d 379, 387, 200 NE2d 93 (leave to appeal denied, November term, 1964); Jans v. City of Evanston, 52 Ill App2d 61, 68, 201 NE2d 663. Plaintiffs have failed to show by clear and convincing evidence that the ordinance, as applied to lots 30 and 31, is arbitrary and unreasonable. The evidence in this case, viewed most favorably to the plaintiffs, fails to overcome the presumptive validity of the ordinance, Standard State Bank v. Village of Oak Lawn, 29 Ill2d 465, 471, 194 NE2d 201; Jans, supra, 72, 73.

In view of the reasons set forth above, the judgment of the Circuit Court is reversed.

Reversed.

McCORMICK, P. J. and ENGLISH, J., concur.