Albert Kanefield, Plaintiff-Appellant, v. Village of Skokie, a Municipal Corporation, Defendant-Appellee.

Gen. No. 49,592.

First District, First Division.

March 1, 1965.

Maurice J. Nathanson, of Chicago (Allen Hartman, of counsel), for appellant.

Marvin J. Glink, Corporation Counsel, and Morton C. Kaplan, Assistant Corporation Counsel, both of Skokie, for appellee.

MR. PRESIDING JUSTICE BURMAN delivered the opinion of the court.

In this action for declaratory judgment, the plaintiff seeks a declaration that the provision of the zoning ordinance of the Village of Skokie classifying his property as B–1 is void and that he has a clear right to construct a modern gasoline service station building on his property. The matter was referred to Jacob Shamberg, a Master in Chancery, who recommended that the ordinance be declared valid; the plaintiff appeals from the judgment of the Circuit Court affirming the Master's recommendations.

The plaintiff contends that the zoning restriction is void because it not only destroys the monetary value of his property, but it also permits uses which are not

suitable for the size, shape and location of the subject property and it precludes the use of the property for its highest and best purposes. The Village contends that the plaintiff has failed to show by clear and affirmative evidence that its ordinance, as applied to the plaintiff's property, is arbitrary, unreasonable or confiscatory; the Village further argues that the proposed use would not, in fact, conform to the general character, zoning and uses of the surrounding area.

The plaintiff, Albert Kanefield, purchased the subject property in October, 1960, for $25,500; he knew at the time of purchase that the zoning ordinance of Skokie classified the subject property as a B-1 neighborhood shopping district in which the following uses are permitted: catering and delicatessen business, public automobile garage, sixty per cent of which may be devoted to automobile repairing and servicing, automobile storage garage, automobile parking lot, restaurant, undertaking establishment, bank, bakery, barber shop, beauty shop, bicycle and repair shop, and various other business establishments. The plaintiff knew when he bought the property that a gas station was not permitted in the B-1 district. He has an agreement with the Texaco Company under which Texaco has the option of buying the property for $40,000 if the plaintiff can obtain the necessary zoning and building permits for the construction of a gas station.

The subject property, a triangular lot embracing about 13,000 square feet of ground, is located on the northeast corner of the intersection of Niles Center Road and Church Street in the Village of Skokie. Niles Center Road runs southwest and northeast and forms the longest boundary of the subject property. Church Street runs east and west and forms the shortest side of the plot of land. Niles Center Road is a two-lane, paved highway and Church Street was being im-

474

proved to be a four-lane, paved highway at the time of the hearings before the Master. Both streets are major thoroughfares. The third side of the subject property is bounded by a portion of Kenton Avenue, a north-south street, which is an unpaved half-street, along the east side of the subject property. However, Kenton Avenue is a two-lane, paved street south of its intersection with Church Street and north of its intersection with Niles Center Road. Located on the subject property is a small brick building which was once used as a service station; that use was completely abandoned and the building was subsequently used as a residence. Hence there is no contention that the prior use as a service station justifies the plaintiff's proposed service station as a nonconforming use.

The subject property is located in the center of an area zoned as a B-1 neighborhood shopping district. However, the development of this B-1 district has been predominantly for nonbusiness uses. In the B-1 area north of Church Street and west of Niles Center Road, there is a plot of ground occupied only by an old, frame farmhouse; this plot is owned by St. Peters Catholic Church and at the time evidence was taken the church had immediate plans to allow the land to be used for little league baseball. The church also had long term plans to use the land for the construction of a church building. To the west of this property along the north side of Church Street, there is a cluster of small commercial and service businesses which were described as a neighborhood shopping center.

Directly south of the subject property in the B-1 area on the south side of Church Street, between Kenton Avenue and Niles Center Road, there is a plot of land owned by Congregation B'nai Emunah. The southern part of this plot is occupied by a social hall, now used as a sanctuary, and a school; the northern

475

part of the plot which lies along Church Street is vacant and the Congregation had plans to use it for the construction of a permanent sanctuary building. In the B-1 district west of Niles Center Road along the south side of Church Street and across from the shopping center mentioned above, there is a group of three and four-family apartment houses.

East of the subject property, across Kenton Avenue and along the north side of Church Street, the B-1 district extends a half-block; the first five lots are vacant, but approximately 125 feet east of Kenton Avenue, there is the first of a row of five new single-family residences. The property east of the subject premises diagonally across the intersection of Church Street and Kenton Avenue is likewise zoned B-1 for about a half-block and is occupied by the Evanshire United Presbyterian Church building.

In the general vicinity of the subject premises, the property which is not zoned B-1 is classified as R-1 (single-family residential) and R-3 (two-family residential). This surrounding area has generally been developed for residential uses. The only other use made of the property in this general vicinity is for a grade school and a junior high school which is located one block north of the subject premises on the west side of Kenton Avenue.

 The rules which govern the validity of zoning ordinances are clearly settled. Zoning ordinances are presumed to be valid. Those who challenge the validity of a zoning ordinance must show by clear and convincing evidence that the ordinance is arbitrary, unreasonable and that it does not bear a reasonable relation to the public health, safety, comfort or welfare. Where it appears from all the evidence that room exists for a difference of opinion concerning the reasonableness of the zoning classification, the legislative judgment must be conclusive. Urann v. Village

476

of Hinsdale, 30 Ill2d 170, 195 NE2d 643. Krom v. City of Elmhurst, 8 Ill2d 104, 133 NE2d 1. Various factors may be taken into consideration in determining the validity of the ordinance; they include the existing uses and zoning of property in the vicinity; the extent to which the value of the subject property is diminished by the challenged zoning restriction; the extent to which the removal of the restriction on the subject property would depreciate the value of other property in the vicinity; the relative gain to the public compared to the hardship imposed on the owner of the subject property; the suitability of the property for the zoned purposes. See LaSalle Nat. Bank of Chicago v. County of Cook, 12 Ill2d 40, 145 NE2d 65 and Hartung v. Village of Skokie, 22 Ill2d 485, 177 NE2d 328 and the cases cited therein.

Considering each of these factors in light of the evidence disclosed in the record, we are of the opinion that the plaintiff has not sustained the burden which is necessary to invalidate the ordinance in question. It is clear from the undisputed testimony that the subject property is located in a B–1 district which has not been developed with B–1 uses with the sole exception of the small shopping center; rather it has been developed with nonbusiness uses including residential and religious uses. Furthermore, the immediate vicinity beyond the B–1 zone is predominantly residential. The use of the plaintiff's property for a service station would clearly, in our opinion, be out of conformity with the existing uses in the vicinity.

The evidence indicates that the value of the subject property for gas station use is higher than for the various uses permitted under the B–1 classification. A real estate agent employed by the Texaco Company who was called by the plaintiff, testified that if the subject property were rezoned for service station use it would be worth $50,000 and that a locksmith shop,

a messenger and telegraph station and a photographer's studio could be placed on the property, which would have a value of between $20,000 and $25,000 for such uses. A realtor called by the plaintiff testified that the subject property was worth between $45,000 and $50,000 for service station use and only $15,000 for the uses allowed under the existing restriction.

The evidence further indicates that the proposed use would have an "extremely detrimental effect" on the property in the immediate area. Plaintiff's witness on this point who was a professional city planner testified that a service station would have no more adverse an effect on the neighboring churches and residences than the permitted B–1 uses. We do not agree. The defendant's city planning consultant, who has prepared plans for various municipal governments and was helping to draft a new zoning ordinance for the Village of Skokie, testified that any businesses other than those permitted under B–1 "would tend to break down the present character and be an actual intrusion of an alien character in the total of the area around the intersection of Niles Center Road and Church Street" and that the proposed use would have an "extremely detrimental effect" on the property in the immediate area, particularly on the nearby churches and residences. The defendant's realtor testified that if the subject property were used for a gas station, the single-family residences within a radius of 500 feet would be decreased by approximately five to fifteen percent of their present value and that the added traffic into the gas station would create a safety hazard for pedestrians. The three members of the clergy from the nearby churches were of the opinion that a service station on the subject property would be detrimental to the economic and service values of their respective houses of worship. An attorney who is a member of the local school board expressed his view

478

that a service station would tend to downgrade the value of all the property in the area. Finally several homeowners in the vicinity of the subject property testified that they had purchased their property in reliance on the existing zoning and that they objected to the bright lighting, and the debris, fumes and noise which a service station might bring to the area.

Much of the testimony in the record deals with the suitability of the subject property for the uses permitted by the B–1 restriction. Though the plaintiff's witnesses testified that the highest and best use of the property was for use as a service station and that because of its shape, size and location the subject property was unsuitable for some of the many permitted uses, all of them admitted that the property could be used for one or two of the permitted purposes. The defendant's planning consultant and realtor both testified that in their opinions the highest and best use of the property is for the permitted uses, for which the subject property is well suited.

We believe that on this evidence there is ample room for a difference of opinion as to whether the ordinance bears a reasonable relation to the public health, safety, comfort and welfare. On the basis of the evidence it could fairly be concluded that the plaintiff's proposed use does not conform to the actual development of uses in this neighborhood; that, though it would be most profitable to the plaintiff to sell his property for use as a gas station, permitting him to do so would cause serious economic injury to the neighboring churches and residents; that the detriment to the plaintiff is minimized by the fact that the subject property is suitable for various other uses which are permitted under the ordinance; and that the detriment to the public which would be caused by permitting construction of a gas station clearly outweighs any detriment to the plaintiff.

The plaintiff argues that the B–1 classification is arbitrary and discriminatory and hence invalid because it prevents him from building a service station on the subject property while it permits other uses which the plaintiff claims would have the same or a more adverse effect on the neighboring property than his proposed use. Plaintiff relies on the following series of cases; Ronda Realty Corp. v. Lawton, 414 Ill 313, 111 NE2d 310; City of Chicago v. Sachs, 1 Ill2d 342, 115 NE2d 762; Illinois Nat. Bank & Trust Co. of Rockford v. City of Winnebago, 19 Ill2d 487, 167 NE2d 401; Columbus Park Congregation v. Board of Appeals of Chicago, 25 Ill2d 65, 182 NE2d 722; Frost v. Village of Glenn Ellyn, 30 Ill2d 241, 195 NE2d 616. We do not believe that these cases are controlling in the instant case. In all those cases it appears that the permitted uses had in fact been fully established on the property surrounding the subject premises. The importance of this fact to the conclusion of the court in those cases is made clear in the Frost case; there the plaintiff wished to use his property for a drive-in restaurant. His property was zoned so as not to permit such a use, even though the zoning ordinance did permit use of the property for a certain type of nondrive-in restaurant as well as other business uses. Near the subject property was a laundromat, a gas station, a supermarket with parking facilities for 40 to 50 cars, a drive-in dry cleaning establishment and a restaurant. In finding that the classification was invalid because it was arbitrary and discrimnatory, the court indicated the importance of the existing uses in the vicinity.

In the instant case the property surrounding the subject premises has not been developed with business uses specifically permitted under the B–1 classification, but mainly with residential and religious uses which would clearly be harmed by the construction of the proposed gas station. Hence the line of

cases cited by the plaintiff does not apply, but rather another line of authority controls. In Jacobson v. City of Evanston, 10 Ill2d 61, 139 NE2d 205, and La Salle Nat. Bank v. City of Chicago, 27 Ill2d 278, 189 NE2d 273, the court upheld zoning classifications against the charge that they were arbitrary and discriminatory. In both those cases the uses permitted under the classification had not been established in the vicinity of the subject property and the court held that whatever impact the permitted uses might have in a given situation, they had not been shown to have had any substantial effect on the plaintiff or his property. The same applies in the instant case. We do not believe that we should permit rezoning for a use, which is inconsistent with the established uses in the vicinity and which would inflict injury on the property in the vicinity, merely on the basis of a claim that the uses, which are permitted but which have not been established, might be more detrimental to the surrounding neighborhood than the plaintiff's unpermitted use.

For these reasons, the judgment of the Circuit Court is affirmed.

Affirmed.

MURPHY and KLUCZYNSKI, JJ., concur.