Thomas J. Bowler, Plaintiff-Appellee, v. Village of Skokie, a Municipal Corporation, Defendant-Appellant.

Gen. No. 49,929.

First District, Fourth Division.

March 31, 1965.

Rehearing denied April 20, 1965.

 

Marvin J. Glink, Corporation Counsel, of Skokie (Morton C. Kaplan, Assistant Corporation Counsel), for appellant.

Murphy and Pearson, of Chicago (Eugene Dooner Murphy, of counsel), for appellee.

MR. JUSTICE DRUCKER delivered the opinion of the court.

Plaintiff, after exhausting his administrative remedies, sought a declaratory judgment to effectuate a change in use classification of his property from "B-1 Neighborhood Shopping District" to "B-3 Business District." The decree of the Circuit Court held that the classification of plaintiff's property as B-1 was unreasonable and void and ordered that plaintiff be permitted to construct a gasoline service station on the property. Defendant appeals.

Defendant contends that the classification of the "B-1 Neighborhood Shopping District" as applied to plaintiff's property and the exclusion of the gasoline station therefrom was a valid exercise of legislative judgment and must be sustained unless clearly shown to be arbitrary. Plaintiff argues that the zoning classification cannot be sustained where there is nothing

inherently different in the character of the business which the plaintiff seeks to establish on his property from other permitted business uses.

Plaintiff testified that he "was aware that an automobile service station could not be erected on the subject premises" when he purchased the property for $50,000 in January 1963; that the purchase price "might have included some fees in addition to the price of the property"; and that at the time he purchased the property he had "a verbal agreement with Shell Oil Company" that he would "build the station and lease it back to Shell for approximately $9,000 or $10,000 a year with a fifteen year lease."

The subject property, 125 feet by 127 feet, comprised five vacant lots located on the southwest corner of Crawford Avenue and Church Street in the Village of Skokie. Directly south of the subject property is an alley, south of the alley are four vacant lots; south of these lots are "residential properties"; at the southeast corner is a vacant tract extending 500 feet south from Church Street (zoned B–1); extending south and southeast of the tract is Timber Ridge Subdivision which is "built up with residential parcels." At the northeast corner are seven small stores [1] comprising the Crawford-Church Shopping Center; a restaurant is situated on the northwest corner; north of the restaurant is a residence; and north of the residence is a trailer court (one-half block from the intersection). West of the subject property on Church Street is a two-story building, a barber shop and beauty salon occupy the first floor, an "apartment or an office" are on the second floor.

---

[1] The stores include a drug store, a cosmetics shop, a decorator, a cleaner, a dentist, a grocery store and a food take-out store.

The subject property is zoned B–1 Neighborhood Shopping District. The ordinance permits the following uses relating to automobiles:[2]

8. Garage, public, except that the portion of such building which is used for repairing or servicing shall occupy not more than sixty (60) per cent of the total floor area and no lot or portion thereof shall be used for the display of used cars.

9. Garage, storage.

15. Parking space and lots for the parking of automobiles.

The B–1 regulation also permits: "accessory buildings and uses customarily incident" to the permitted uses, and a sign or bulletin board.[3]

A "filling station" (permitted under B–3 but not under B–1 classification) is defined[4] as:

Any building, structure, or land used for the dispensing, sale or offering for sale at retail, of any automobile fuels, oils or accessories. When such dispensing, sale or offering for sale is incidental to the conduct of a public garage, the premises are classified as a public garage.

The plaintiff requested a change in the use classification to B–3 Business District. Defendant's witness,

---

[2] The list of other permitted uses includes: bank, bakery, barber shop, catering, custom dressmaking, laundromat, medical clinic, offices, photographer's studio, restaurant, retail business, certain repair shops, funeral home and other "neighborhood" oriented uses.

[3] There are stringent restrictions in the use of signs: a sign cannot exceed 25 square feet; it must relate to services or products offered within the building to which the sign is attached; and it may not project beyond a building more than two feet.

[4] The definition is set forth in plaintiff's brief; it is not in the record.

M. Eugene Baughman, a city planning and zoning consultant, testified that:

The B–3 enables the owners of the property to use the property for drive-in or automobile oriented type of uses, such as drive-in restaurants, used car lots, service stations. It also adds the element of billboards that are not allowed in the other districts.

 A zoning ordinance is presumed to be valid. It is incumbent upon the party challenging the validity of the ordinance to show, by clear and convincing evidence, that the ordinance, as applied to the property in question, is arbitrary, unreasonable and that it does not bear a reasonable relation to public health, safety, comfort and welfare. When it appears from all the evidence that room exists for a legitimate difference of opinion concerning the reasonableness of the zoning classification, the legislative judgment must be conclusive. Standard State Bank v. Village of Oak Lawn, 29 Ill2d 465, 194 NE2d 201; La Salle Nat. Bank v. County of Cook, 12 Ill2d 40, 145 NE2d 65; Reskin v. City of Northlake, 55 Ill App2d 184, 204 NE2d 600.

Defendant's witness Baughman also testified that the "predominant land use in the area is single-family residential"; that the highest and best use is for a "neighborhood type of retail use as an accommodation to the area, the type of uses permitted in the B–1 classification"; that the fact there are no automobile service stations on Church Street "is significant from a planning point of view." He characterized Church Street:

. . . a collector street of a residential character and the only type of business uses that are on Church Street are in this B–1 classification, and they are mainly to serve the immediate neighbor-

hoods and they are not oriented to transient traffic from out of the city.

. . . . . .

Church Street serves primarily a residential need and is not a regional thoroughfare.

It is not a primary or State highway, and from the east limits of the Village, that is at the Evanston City Limits, running eastwardly to the west boundary of Skokie, Church Street is characterized by a combination of residential use and the type of retail uses that serve residential neighborhoods.

There is absence of any B–2, B–3 or any B–4 districts along Church Street.

The witness detailed the possible problems associated with a service station at the subject intersection:

The development of the subject property for a gasoline service station would have an influence from the standpoint of the accessory types of uses that are permitted under the B–3 district. The billboards advertising any other product, the use of the lighting facilities immediately adjacent to residential property, the traffic generation on the subject property from the types of uses, such as bowling alleys, theatres or other types of traffic generators which would cause this traffic to convene in the area and enter and leave the property along Crawford and along Church Street. The existence of a median strip along Crawford affects subject site in that northbound traffic on Crawford could not enter the property unless it made a left turn onto Church and then made a second left turn back into the property. This would be an effect similar to that of a U turn in the middle of an intersection.

Baughman testified that the erection of a service station on Church Street portended serious consequences because:

> There is a complete absence of the service station and any change of that would result in a monopolistic situation in relation to the service stations, and as a result of other operators would be forced to petition to start others on Church Street, and that would be an invasion of the character of the neighborhood.

Defendant's witness John J. Puetz concurred with Baughman's observation and opinion that Church Street is "generally a residential street." He testified that the trailer camp nearby on Crawford Avenue "has a park-like appearance and . . . has had no effect on the surrounding residential properties."

Several witnesses for plaintiff testified that the highest and best use of the subject property would be for a service station; that such a use would not have a detrimental effect on the residential property in the neighborhood; that the property could be improved with local service type of stores; that the Timber Ridge area is a "high-grade single-family residential area." A witness for the plaintiff conceded that "if a service station were permitted on the subject site it is very possible that one could be permitted on the southeast corner also"; the witnesses for plaintiff generally agreed that a service station would complement other facilities at the intersection.

In the case at bar, the evidence adduced by the plaintiff shows nothing more than an opinion that a gasoline service station might be compatible with the existing uses in the area. The evidence is not "clear and convincing" that the legislative determination was unreasonable or capricious. The subject property is situated on the southwest corner of Church and Craw-

ford. Crawford is a residential street from about 125 feet north of the intersection, extending to within 100 feet of Simpson Avenue to the north (about four blocks), and from about 240 feet south of the intersection extending south to about 125 feet north of Dempster Street (a distance of almost six blocks). Church is primarily a residential street. The only nonresidential developments situated at or near the intersection of Church and Crawford have been developed in accordance with the B–1 Neighborhood Shopping Classification.

■ The testimony of plaintiff's witness was that the property as presently zoned is worth $50,000 and if zoned for use for a service station would approximate $80,000. The fact that there is a difference in the value of the tract depending on the zoning classification "is usually true and is not in itself decisive." Ryan v. City of Elmhurst, 28 Ill2d 196, 190 NE2d 737; Reskin, supra.

The uncontroverted testimony of plaintiff's witnesses shows that the property can be utilized for B–1 uses without any diminution in the value of the property as compared to its purchase price or present value.

Furthermore, several neighboring property owners testified they had "checked the zoning restrictions in the area" before purchasing property; that the examination revealed that the "restrictions were to B–1" at the corner "but not for a gas station." Neighboring property owners have a right to rely on the fact that there will be no change in zoning except for the public good, Garner v. City of Carmi, 28 Ill2d 560, 192 NE2d 816.

■ Plaintiff's purchase of the subject property in the face of the existing zoning restrictions is an additional factor to be considered. As expressed in Moeller v. City of Moline, 50 Ill App2d 379 at 387, 200 NE2d 93:

Plaintiff purchased his property with full knowledge of the zoning restrictions. While we are not unmindful of the rule that this does not create any estoppel against him, we also think it reasonably clear that the purchase was made with the very purpose in mind that he now seeks to accomplish by this suit.

■■ At best there is ample room for a difference of opinion as to whether the ordinance bears a reasonable relation to the public health, safety, comfort and welfare. In Kanefield v. Village of Skokie, 56 Ill App2d 472, 206 NE2d 447, a comparable case involving property at Niles Center Road and Church Street, 12 blocks west of the subject property, the court stated:

> On the basis of the evidence it could fairly be concluded that the plaintiff's proposed use does not conform to the actual development of uses in this neighborhood; that, though it would be most profitable to the plaintiff to sell his property for use as a gas station, permitting him to do so would cause serious economic injury to the neighboring churches and residents; that the detriment to the plaintiff is minimized by the fact that the subject property is suitable for various other uses which are permitted under the ordinance; and that the detriment to the public which would be caused by permitting construction of a gas station clearly outweighs any detriment to the plaintiff.

Plaintiff has failed to show, by clear and convincing evidence, that the B-1 zoning classification is unreasonable as applied to his property. The exclusion of a gasoline service station from the B-1 district is a legitimate legislative determination.

Plaintiff argues that a gasoline station is not significantly different from a public garage as such is de-

329

fined and allowed in a B–1 district. From this premise plaintiff concludes that the ordinance is discriminatory and unreasonable. The most pertinent authority cited by plaintiff is Frost v. Village of Glen Ellyn, 30 Ill2d 241, 195 NE2d 616, which held that a drive-in restaurant is not significantly different from a restaurant fully enclosed within four walls. However, the court recognized that a crucial and significant factor was the established character of the neighborhood and the existing uses when it stated at page 246: "And this is particularly true in view of the existing uses along Main Street which characterize and predominate the district." Applying this logic, we find that in view of the extensive residential development which continues for several blocks in all directions and the development of permitted B–1 enterprises at the Crawford-Church intersection, the exclusion of a gasoline service station was not arbitrary.

Additional support for this conclusion is derived from the distinctions between a public garage and a filling station. The ordinance pertaining to a public garage requires that all repair, service and storing must be conducted within a building. In the case of a filling station these tasks may be performed outside. The two types of uses differ in terms of dispensing or sale of gasoline. Furthermore, a gasoline station frequently services a transient clientele. The trial judge commented that:

> A gasoline service station isn't exclusively a neighborhood thing. It may be a convenience to the neighborhood. However, doesn't it take its character from the transit trade. I doubt it very much whether a gasoline station could survive on local gas consumption.

Witness Baughman's opinion that B–1 uses serve as "an accommodation to the area" substantiates this point.

The decision of the Circuit Court of Cook County declaring the ordinance unreasonable and void as it applies to plaintiff's property and permitting the use of the property for a gasoline service station is reversed.

Reversed.

McCORMICK, P. J. and ENGLISH, J., concur.