(No. 36195.

THE COSMOPOLITAN NATIONAL BANK OF CHICAGO, as Trustee, *et al.*, Appellees, vs. THE VILLAGE OF MOUNT PROSPECT, Appellant.

*Opinion filed June 14, 1961.*

Robert J. Downing, of Chicago (Robert G. Lussier, and Raskin & Downing, both of Chicago, of counsel,) for appellant.

Richard F. Babcock, of Chicago, (R. Marlin Smith, and Ross, McGowan & O'Keefe, of Chicago, of counsel,) for appellees.

Mr. Chief Justice Schaefer delivered the opinion of the court:

The village of Mount Prospect appeals directly from a decree of the circuit court of Cook County which held the village's zoning ordinance unconstitutional as applied to plaintiffs' property. Legal title to the property is held by the Cosmopolitan National Bank of Chicago as trustee for Meyer Kushner and Abraham Kushner and their wives. It is zoned "R-2," and the permitted uses are single-family and duplex residences. In this action by the bank and the beneficiaries the court issued an injunction to restrain the enforcement of the ordinance on the ground that it is invalid insofar as it prohibits the erection of apartment buildings on the property. The validity of a municipal ordinance is involved, and the trial judge has certified that the public interest requires a direct appeal to this court.

The property in question is a vacant rectangular tract 150 feet deep with a frontage of 600 feet along the west side of Elmhurst Road. It is bounded on the north by Lincoln Street and on the south by Sha-Bonee Trail. Its western boundary is the eastern boundary of the property which faces on I-Oka Avenue, the next street west of Elmhurst Road. The block to the north, immediately across Lincoln Street, is occupied by St. Raymond School, a parochial school. The entire frontage directly across Elmhurst Road

from the plaintiffs' property is improved with 14 duplex residences, each containing two dwelling units.

The village of Mount Prospect is roughly bisected from southeast to northwest by the tracks of the Chicago and North Western Railway. The industrial, commercial and apartment districts are primarily located close to the railroad. Almost all of the remainder of the village is zoned for single-family residence use. Route 83 runs through the village from south to north. It is known as Elmhurst Road from the south limits of the village north to Lincoln Street, the north boundary of the plaintiffs' property. There it makes a sweeping curve to the east, continues east on Lincoln Street for 1½ blocks and then curves north again to Main Street, and continues through the commercial area and on to the north limits of the village on that street. Route 83 carries a heavy load of both commercial and passenger vehicles. The master found that on a single day between the hours of 7:30 A.M. and 6:00 P.M. approximately 6415 vehicles passed the subject property on Route 83.

Plaintiffs' property is about ½ mile south of the commercial area adjacent to the railroad, and is slightly north of the center of the extensive R-1 single-family residence district south of the tracks. It is, however, zoned R-2, as is the tract directly across Elmhurst Road. Both tracts were so zoned in 1944. Under the R-2 classification duplexes and single-family dwellings, but not apartments, are permitted. With the property across the street, plaintiffs' land constitutes a small island zoned R-2 in the midst of a large district zoned and developed for single-family residences.

Plaintiffs purchased their property in January of 1956, and began their effort to have it rezoned shortly thereafter. They propose to erect six apartment buildings which would contain a total of 72 dwelling units, 64 with one bedroom and 8 with two bedrooms. Each of the six buildings would be two stories high and, as in large modern motels, each unit would have its own direct ingress and egress without

the use of interior halls. This would be accomplished by a covered balcony which would run the length of each building to provide access to the second floor apartments. The buildings would occupy approximately 29% of the land. A 75-car parking lot at the rear would be provided. There would be no driveway directly onto route 83; the cars would enter the parking lot from Sha-Bonee Trail and exit onto Lincoln Street.

The property was purchased in 1956 for $46,000. Testifying in 1958, the valuation witnesses for both parties agreed that its value for use as duplex residences was then $75,000. They agreed, too, that it would be worth more if it was zoned for apartment use, the plaintiffs' witness testifying to a value of $120,000 for that purpose, and the defendant's to a value of $90,000.

The plaintiffs' witness was of the opinion that the proposed development would have no effect on property values in the surrounding area. The defendant's witness was of the opinion that the value of the property immediately to the west, which abuts upon the proposed 75-car parking lot, would be depreciated 10%. In that half of the block there are nine single-family residences with an average value of approximately $30,000 each. He also testified that other single-family residences in the area would be depreciated about 5%, making a total depreciation of the value of other property amounting to about $146,000.

The master's conclusions, which were approved by the trial court, are as follows: "It is the Master's firm belief, after weighing all the evidence in the case, that from the point of view of the welfare of the community, increased revenue to the Village because of higher tax revenue resulting from construction of more expensive housing and no substantial difference in the type of housing between duplex and multiple apartments as proposed by plaintiffs, plaintiffs are being arbitrarily restricted in their proposed development of the subject property. Plaintiffs' architect

testified that the cost of the proposed improvements on the subject property would be approximately $736,000.00. The value of the land will increase approximately $45,000.00 because of the type of improvement and expenditure. If plaintiffs were confined to duplex construction, not more than 10 such buildings could be erected under the existing ordinance. Each building requires a minimum of 60 front feet so that on land having 600 front feet only 10 buildings can lawfully be erected. Assuming the cost of each (based upon cost of comparable construction on the Di Mucci parcel) [the property directly across Elmhurst Road] will be $30,000.00, the entire project would cost approximately $300,000.00 as compared to $736,000.00. The difference in value will produce greater revenue to the Village without a corresponding burden on its facilities. * * * To permit duplexes to be constructed on the subject property and the Di Mucci property and prohibit two-story well-designed structurally and esthetically sound multiple apartment buildings with ample off the street parking facilities and with rear driveways opening on the side streets, appears to the Master to be arbitrary and capricious."

In our opinion these conclusions can not be sustained. Any classification of permissible land uses is reflected in taxable values. In most, if not in all instances, when a municipality classifies land to permit single-family dwellings but to prohibit apartment uses, it consciously rejects the possibility of higher assessed valuations in favor of other values which it considers more important. The validity of its choice is not controlled by a comparison of the cost of improvements that might be erected under different zoning patterns. The master's reliance upon testimony as to enhanced tax revenues was unwarranted.

The master also adopted the thesis that the municipality was not permitted to establish gradations in multiple-dwelling uses. It was his view that if both the subject property and the property directly across Elmhurst Road "had

been zoned for an R-1 use consistent with the property surrounding it, plaintiffs could by no means whatsoever overthrow the ordinance or challenge its validity." He felt, however, that because the two tracts had been zoned for duplexes, "the zoning authorities contemplated erection of structures substantially different than single family residences." He pointed out that "here, multiple housing has already been constructed opposite the subject property. It is no longer single-family dwelling. Two families occupy the same structure * * *."

Our decisions have sustained intervening categories of residential use between the single-family residence and multiple apartments. In *Jacobson* v. *City of Evanston*, 10 Ill.2d 61, this court rejected the plaintiff's attempt to obtain judicial sanction for a third apartment on property that was zoned for two-family apartment use. And in *Speroni* v. *Board of Appeals*, 368 Ill. 568, an ordinance restricting the use of property to "single and two family houses" was sustained against attack by a property owner who sought to erect an apartment building. *Cf. Fanale* v. *Borough of Harbrouck Heights*, (26 N.J. 320,) 139 A.2d 749.

The plaintiffs' case for eliminating gradations between single-family residence and multiple-apartment uses is based first upon a difference in the kind of occupancy anticipated in the plaintiffs' proposed apartments, as distinguished from that anticipated in duplex residences. The plaintiffs have emphasized throughout that their proposed structures are not designed primarily for families with children. One of their witnesses testified that in his opinion the 64 single-bedroom units would average ½ child per unit, and perhaps two children each in the 8 two-bedroom units. He estimated also that if ten duplexes were built upon the property, each of the twenty families would have two children. We find it unnecessary to evaluate or to compare these estimates, because a municipality is not required to formulate its zoning requirements so that families with children are discouraged.

We are aware of no constitutional or statutory provision that would prohibit it from making the contrary choice. There was also much testimony on behalf of the plaintiffs designed to establish that there was a "need" in the village of Mount Prospect for the kind of multiple-apartment development that the plaintiffs proposed. The master properly disregarded this testimony, for to the extent that the term "need" was not used as a euphemism for market demand, it involved considerations properly committed to the judgment of the municipality.

The second ground for eliminating distinctions between different kinds of multi-family use appears to have rested upon subjective architectural preferences. With respect to the proposed development, one of plaintiffs' witnesses testified, "There would be a feeling of airiness, of openness, of architectural merit which does not obtain on the east side of the street." And the master described it as "two-story well-designed structurally and esthetically sound multiple apartment buildings." These preferences do not, in our opinion, justify an obliteration of the distinction between duplex residences and multiple apartments.

In many cases this court has held that the fact that property is located upon a main traffic artery does not invalidate a zoning ordinance which restricts its use to residential purposes. (*Cosmopolitan National Bank* v. *City of Chicago, ante,* p. 367; *Elmhurst National Bank* v. *City of Chicago, ante, p.* 396; *Fox* v. *City of Springfield,* 10 Ill.2d 198, 201; *La Salle National Bank* v. *City of Chicago,* 4 Ill.2d 253, 256; *Herzog Building Corp.* v. *City of Des Plaines,* 3 Ill.2d 206, 209.) In the present case the record shows that 59 building permits were issued by the village for the construction of single-family or duplex residences on Route 83 between January of 1955 and January of 1958. This fact precludes any contention that traffic on Route 83 makes the plaintiffs' property unsuitable for the use for which it is zoned. The desirability of plaintiffs' plan for

routing a large number of cars onto Lincoln Street next to St. Raymond School can hardly be said to be beyond debate, and in any event there is no showing but that traffic could be handled in the same way if the property was improved with duplex residences.

The fact that plaintiffs' land would be worth more if the existing zoning ordinance was invalidated is not, of course, determinative. As we pointed out in *Bolger* v. *Village of Mount Prospect,* 10 Ill.2d 596, 602, "that is true in nearly every zoning case in which the use of property is limited." The view expressed in *Liberty National Bank* v. *City of Chicago,* 10 Ill.2d 137, 144, is relevant here: "The undisputed testimony is that plaintiffs knew the property was zoned for residence purposes when they bought it and that they paid a price consistent with its use for that purpose. The fact that its value will now be enhanced if a business use is permitted does not justify a conclusion that the ordinance is confiscatory. (*First Nat. Bank of Lake Forest* v. *County of Lake,* 7 Ill.2d 213, 227.)" In the present case, despite the challenged zoning, the property has appreciated substantially in value since it was purchased by the plaintiffs.

If it could be said that the plaintiffs' evidence suggested that the present zoning is debatable, it did no more than that. We are of the opinion, therefore, that the trial court erred in holding the zoning ordinance invalid as applied to the plaintiffs' property. This conclusion makes it unnecessary to consider the plaintiffs' further attack upon the minimum lot-area and setback requirements of the ordinance.

The decree of the circuit court is reversed.

*Decree reversed.*