August Goeller and Helene A. Goeller, His Wife, Plain-
tiffs-Appellees, v. City of Chicago, a Municipal Cor-
poration, Defendant-Appellant.

Gen. No. 52,117.

First District.

December 2, 1968.

Raymond F. Simon, Corporation Counsel, of Chicago (Marvin E. Aspen and Howard C. Goldman, Assistant Corporation Counsel, of counsel), for appellant.

Maurice J. Nathanson, of Chicago (Paul Peter Black, of counsel), for appellees.

MR. JUSTICE SEIDENFELD delivered the opinion of the court.

Defendant, City of Chicago, appeals from a Declaratory Judgment which ordered that its zoning ordinance as it applied to plaintiffs' property be declared null and void and held that the plaintiffs could use the premises to construct an apartment building subject to the R4 provisions of the Chicago Zoning Ordinance, with five dwelling units and five parking places in accordance with plans introduced in the case.

The validity of the provisions of the City's B4–1 classification is put in issue as applied to plaintiffs' property:

"CHICAGO ZONING ORDINANCE—

"8.3–4 PERMITTED USES—B4–1 to B4–5 RESTRICTED SERVICE DISTRICTS.

"A. Uses permitted in the B4–1 to B4–5 Districts inclusive are subject to the following conditions:

"(1) Dwelling units and lodging rooms other than those in a transient hotel or motel, are not permitted below the second floor unless

otherwise set forth or superseded hereinafter. (Amend 7–10–61 Coun J page 5239.)

"(2) Business establishments are restricted to a maximum gross floor area of 18,750 square feet each, exclusive of any floor area devoted to off-street parking or loading facilities. (Amend 4–27–60, Coun J page 2501.)

". . .

"8.4–4 SPECIAL USES—B4–1 to B4–5 RESTRICTED SERVICE DISTRICTS.

". . .

"(3) Dwelling units may be established on the ground floor in B4–1 to B4–5 Districts only, subject to the side yard and rear yard provisions of the corresponding residential district; except for improved property, side yard and rear yard provisions may be otherwise permitted, subject to the provisions of chapter 66 of the Municipal Code. (Amend 7–10–61 Coun J page 5238.)

"8.6–1 MINIMUM LOT AREA—B1–1 to B1–5 LOCAL RETAIL DISTRICTS.

"(1) In a B1–1 District, there shall be provided not less than 2,500 square feet of lot area per dwelling unit, except in B1–1 District which fronts on a Section Line Street, Half-Section Line Street, or the following Major Diagonal Streets: Archer Avenue, Clark Street, Clybourn Avenue, Columbus Avenue, Elston Avenue, Grand Avenue, Higgins Avenue, Lincoln Avenue, Milwaukee Avenue, Northwest Highway, Ogden Avenue, Ridge Avenue, South Chicago Avenue, and Vincennes Avenue, there shall be provided not less than 1,650 square feet of lot

area per dwelling unit. For efficiency units however, there shall be provided not less than 1,650 square feet of lot area per unit, and for lodging rooms there shall be provided not less than 1,250 square feet of lot area per room. (Amend 7–10–61 Coun J page 5239.)

"8.6–4 MINIMUM LOT AREA—B4–1 to B4–5 RE-STRICTED SERVICE DISTRICTS.

"(1) In a B4–1 District, the minimum requirements for lot area per dwelling unit shall be the same as in a B1–1 District."

· · · · · ·

The plaintiffs' property, a vacant lot, is located at the northeast corner of West Addison Street and North Oketo Avenue in the City of Chicago, Illinois. This real estate has a frontage of 36 ft. 2¾″ on West Addison Street and a depth on North Oketo Avenue of approximately 125 ft. to a 16 ft. public alley with a total area of approximately 4,500 sq. ft.

West Addison Street is a half section line street within the City of Chicago. It is an active thoroughfare which runs from Lake Michigan on the east to the city limits on the west. It is a mixed use street, containiing business enterprises, apartment buildings, and family dwellings. In the business areas the buildings contain retail type merchandising stores and apartments on the ground floor and apartments above, so that the street has a prime character of being a multiple dwelling street intermingled with business.

The B4–1 district which contains the plaintiffs' property is encompassed by R–2 single-family residences. The B4–1 district runs east from Osceola Avenue to Odell Avenue on an alley just south of Addison and north of Cornelia, north on Odell to an alley just north of Addison and south of Waveland Avenue. West on that alley from

Odell past Oketo Avenue to an alley just into the Oketo-Osceola block. South on that alley to Addison and then west on Addison to Osceola. Finally it runs south on Osceola to the alley south of Addison and north of Cornelia.

Surrounded by single-family residences, the situation on Addison Avenue through the B4–1 district is as follows: Between Harlem Avenue and Osceola on the north side of Addison proceeding west there is a Gulf Gasoline Station, followed by an automobile repair shop to Oconto. Between Oconto and Octavia both corners are occupied by two single-family residences with six residential structures between Octavia and Odell (five single-family residences and one two-family residence). Between Odell and Oketo, the frontage where the subject property is located, there is a single-family home on the northwest corner of Odell and Addison. Proceeding west, there is a grocery store with a residence in the rear and a residence on the second floor, two single-family homes. Between Oketo and Osceola on the north side of the street there is a grocery store, a real estate office with a residence in the rear, five single-family homes and a five-flat building on the corner of Osceola and West Addison Street.

The five-family unit building on the northeast corner of Osceola and Addison is a nonconforming use but was built before the 1957 amendment and is in compliance with the 1942 ordinance which immediately preceded the 1957 amendment.

This building is one block west of the subject property. There are similar buildings on the northwest and southwest corners at this same intersection.

On the southwest corner of Addison and Ottawa Avenues, five blocks west of plaintiffs' property, are a group of buildings similar to that proposed by the plaintiffs.

72

There is an R–4 district on the north side of Addison between Ottawa and Oriole, five blocks west of the plaintiffs' property.

There are shopping centers four blocks and eight blocks away from the B4–1 zone. The buildings in the B4–1 zone comply almost uniformly with the B4–1 requirements, but business is poor in this area and no significant development businesswise has taken place in the zone in at least the last ten years.

Testimony evidenced that the B4–1 business use was impractical because the plaintiffs could not comply with the 100% B4–1 off-street parking requirements. Plaintiffs could comply with the R–4 75% off-street parking requirements. Testimony given valued the plaintiffs' property at $11,000 to $14,000 as a B4–1 business use and $18,000 to $20,000 for a five-apartment use. There was no evidence of the value of the 3-apartment special use and variation granted to the plaintiffs.

Defendants presented testimony that a B4–1 use was the highest and best use both from the owners' economical development standpoint and from a general planning standpoint. Plaintiffs presented testimony that the best and highest use was for a five-apartment dwelling.

In 1958, one year after the comprehensive amendment, plaintiffs purchased their property for around $12,000. On July 13, 1965 the plaintiffs were granted a special use (to build a 3-apartment building with an apartment on the first floor) and a variation (permission to build 3 apartments although their 4,500 sq. ft. was under the minimum requirement of 4,950 sq. ft. or 1,650 sq. ft. per unit).

On December 29, 1965, the plaintiffs initiated this action for a declaratory judgment alleging that the zoning ordinance was confiscatory and that the highest and best use was for a five-apartment building.

The City urges that the plaintiffs have failed to overcome the presumption of the validity of the zoning ordinance, in that: (1) the proof offered by plaintiffs revealed that the square block within which the subject property is located, is completely occupied by either single-family or B4–1 uses, and the general neighborhood is predominantly devoted to either single-family or B4–1 uses; and (2) no hardship to the plaintiffs was proved inasmuch as the owners, who had purchased with knowledge of the classification, had previously sought and secured not only a special use under the zoning ordinance to construct a dwelling unit on the ground floor which would have permitted the erection of a three-apartment building, but also a variation of certain lot area regulations and no proof was offered to establish the difference in value between the property with the right to build as granted by the zoning board and the value testified to for a five-apartment building site; and (3) the presumption of the validity of the density restriction of the ordinance was not overcome by any evidence, and the court incorrectly considered only uses rather than intensity of use.

Plaintiffs' theory throughout has been that the only issue involved is whether the presumption of the validity of the B4–1 ordinance requiring a business use on the first floor has been overcome. They argue that the City's classification ignores the trend of development along West Addison Street, which has shown no business development for ten years and construction of or conversion to multiple-apartment uses. They claim hardship in that they cannot develop their property for business use because they cannot furnish off-street parking in the square foot area, and in that testimony in the record shows a value for the B4–1 use of $11,000, but for the highest and best use as a five-apartment building under R4, of $20,000. Finally they argue that the density provisions of the

ordinance should have no application "when there is both two-flat and apartment zoning on Addison Street."

The general legal principles applicable to zoning cases have been well established and no purpose is seen in repeating them here. Each case must determine the applicability of these principles in balancing the factors of the character of the neighborhood, the use to which nearby property is put, the extent to which property values are diminished by the restrictions imposed by the ordinance, and the gain to the public compared with the hardship imposed on the complaining property owners against the presumption of the proper exercise of legislative discretion. See, e. g., LaSalle Nat. Bank of Chicago v. City of Chicago, 5 Ill2d 344, 350–351, 125 NE2d 609 (1955); LaSalle Nat. Bank v. County of Cook, 12 Ill2d 40, 46, 145 NE2d 65 (1957).

The degree of hardship is reduced where a purchaser buys subject to property restrictions because the effect of those restrictions is reflected in his purchase price. Such is the situation here. Furthermore, the hardship to the plaintiffs is somewhat conjectural on this record since the only proof of plaintiffs on this issue showed that the property would be worth $20,000 for the proposed use and $11,000 under the business use of the first floor. However, the proof ignored any comparison of the permitted special use and variation granted as against the five-apartment use proposed with the result that the evidence of existing hardship is incomplete and insufficient. Cosmopolitan Nat. Bank of Chicago v. Chicago, 22 Ill2d 367, 374–375, 16 NE2d 795 (1961); Mutz v. Village of Villa Park, 83 Ill App2d 1, 10, 226 NE2d 644 (1967); Lapkus Builders, Inc. v. Chicago, 30 Ill2d 304, 310, 196 NE2d 682 (1964). (It is to be emphasized that the fact plaintiffs successfully secured a special use and variation in no way inhibits their *right* to challenge the validity of the ordinance.)

On the question of whether the City properly took into account the change in use and development in the area in enacting its zoning ordinance, we, in effect, must consider whether the zoning ordinance retained a meaningful relationship to the needs of the neighborhood and the comprehensive plan of the City.

██ We consider first the use restriction. Although many factors are considered important (see Locker v. City of McHenry, 89 Ill App2d 457, 463, 231 NE2d 685 (1967) ; Jacobson v. City of Evanston, 10 Ill2d 61, 70, 139 NE2d 205 (1957), the primary factor to be considered is whether or not the property is zoned in conformity with the surrounding existing uses and whether those uses are uniform and established. Viggiano v. City of Elmhurst, 67 Ill App2d 140, 142, 213 NE2d 571 (1966). Or stated in terms of neighborhood character, the question is whether there has been a substantial changing trend in the development of the zoned area. Scott v. City of Springfield, 83 Ill App2d 31, 39, 226 NE2d 57 (1967).

The facts demonstrate that little B4–1 business development has taken place and that, in fact, former first-floor businesses have been changed into residential apartments. Legal parking for businesses along the Addison Street area has become an acute problem with evidence that what business has survived the competition of nearby shopping centers must rely on illegal parking for their customers.

The evidence indicates that no new business has developed in this area since the 1957 ordinance, but rather that if any trend at all exists, it has been toward conformity with the neighboring area which is low intensity residential.

██ It is evident from both the general planning view of the City as well as the character of the neighborhood in particular that the first-floor business use restriction has become obsolete.

We do not believe, however, that the case may be disposed on this issue. Considering the ordinance as a whole, it seems apparent that the City drafted into it a recognition of a specific special use of the ground floor for dwelling rather than business in providing:

> "(3) Dwelling units may be established on the ground floor in B4–1 to B4–5 Districts only, subject to the side yard and rear yard provisions of the corresponding residential district. . . ." (Chicago Zoning Ordinance, section 8.4–4 Special Uses, supra.)

Thereby the City would seem to have provided a flexible approach which would permit a nonbusiness use on the ground floor when the public need for such use would so warrant. The Zoning Board, in fact, so applied its restriction in granting the special use and variation to the plaintiffs here.

While plaintiffs argue that the City's action in granting the special use only exemplifies its recognition of the obsolescence of the ground-floor business classification, we cannot give it that narrow interpretation. We are of the opinion that the ordinance, as drafted, more closely supports the City's position that the 1957 ordinance introduced a new concept predicated on intensity of use of lot area rather than on former rigid concepts of uses or types of structures. Cosmopolitan Nat. Bank of Chicago v. Chicago (supra) at pages 369–370. Density restrictions are presumptively reasonably related to the health, welfare and morals of the community. Lapkus Builders, Inc. v. Chicago (supra).

Further reference to the density restrictions in effect throughout the area supports the view that a comprehensive plan with reasonable gradations of intensity of use from district to district was imposed. In the large surrounding R2 area, a maximum of 5,000 square feet of lot area per unit was provided, with exceptions

77

■■■■■■■■■■■■■■

to a minimum of 3,750 square feet. In the bordering B4–1 district a density of 1,650 square feet of lot area per unit is provided. The effect of the judgment of the trial court is to permit a building with only 900 square feet per unit, less than one-fourth of that in the surrounding R2 area.

■ As mentioned above, the plaintiffs purchased the property subject to the existing restrictions. While a purchaser of property is not precluded from challenging a zoning restriction existing at the time of his purchase, the existence of such a restriction is a factor to be considered in determining the validity of the restriction as applied to the property in question, particularly inasmuch as other adjacent property owners may have purchased their property relying upon the restriction and are entitled to protection in such reliance. Vedovell v. City of Northlake, 22 Ill2d 611, 614, 177 NE2d 124 (1961).

Plaintiffs' argument that the issue of density is not applicable to the case because the property in question does not take its character from the R–2 districts, but rather from the Addison Street frontage, and that density control is not intended when there is both two-flat and multiple zoning on Addison Street is not persuasive under the facts in this case. No proof was adduced to show lack of conformity in the district to the intensity of use restriction. It is reasonable to assume that the municipal authorities intended to maintain the lesser density of the surrounding R–2 single-family district area when they zoned the adjacent area containing the subject property B4–1 (it is presumptively so), and in light of the lack of proof that such districting is not reasonably related to the contemporary conditions of the neighborhood, the presumption that the density ordinance is valid should prevail.

■ We are of the opinion that the trial court erred in entering the judgment for the plaintiffs. The presump-

tion of the validity of the zoning ordinance was not overcome under the facts and circumstances of this case, and we, therefore, reverse the judgment below.

Reversed.

ABRAHAMSON, P. J. and DAVIS, J., concur.