Sinclair Refining Company, Inc., Plaintiff-Appellee, *v.* The Village of Wilmette, Defendant-Appellant.

(Nos. 54230, 54238 cons.;

First District—April 21, 1971.

*Rehearing denied May 19, 1971.*

Robert J. Mangler, Corporation Counsel, of Wilmette, and Edwin N. Gunn, of Chicago, for appellant.

Jack M. Siegel, of Chicago, for appellee.

Mr. PRESIDING JUSTICE ADESKO delivered the opinion of the court:

Plaintiff, Sinclair Refining Company, Inc., owner of certain real estate in the Village of Wilmette, brought a declaratory judgment action against the Village, seeking a declaration that the Village Zoning Ordinance which classified the southern 212 feet of the subject property in a B-3 General Business District category and the remainder in an R-3 Group House District category, was unconstitutional as applied to the subject property. Plaintiff also sought the right to construct an automobile laundry on the subject property. On March 24, 1969, after a trial without a jury, the trial court found that the zoning ordinance was unconstitutional as applied to the subject property and that plaintiff was entitled to construct an automobile laundry on the subject property in substantial compliance with the plans submitted into evidence. The defendant Village appeals, contending (1) plaintiff failed to overcome the presumption of validity attaching to the zoning ordinance and (2) the finding of the trial court is against the manifest weight of the evidence.

The subject property is located at the northwest corner of the intersection of Skokie Boulevard and Old Glenview Road in the Village of Wilmette. The property is triangularly shaped with a frontage of approximately 90 feet on Old Glenview Road and approximately 800 feet along Skokie Boulevard. The triangular configuration is caused by the slight westward curve of Skokie Boulevard, a north-south highway, at

a point just north of Old Glenview Road. The southern portion of the triangle having a frontage of approximately 212 feet on the west side of Skokie Boulevard is zoned in the B-3 (General Business District) category and improved with a gasoline filling station. The northern portion of the triangle is zoned in the R-3 (Group House District) category and is vacant. Plaintiff bought the subject property in 1951 and erected the service station thereon in 1952.

Immediately west of the subject property and fronting on Old Glenview Road, is a small shopping area which is improved with a grocery store, barber shop, beauty shop and cleaning establishment. The property to the west of these small stores is developed with single family residences for many blocks. North of the subject property on the west side of Skokie Boulevard is single family residence housing, a school and a park. Directly to the east of the subject property is a florist and greenhouse. North of the florist on the east side of Skokie Boulevard is a large parcel of land which this court recently upheld as validly zoned R-3 property. (*Mangel v. Village of Wilmette* (1969), 115 Ill.App.2d 383, 253 N.E.2d 9.) Directly south of the subject property across old Glenview Road is a funeral home under construction. South of the funeral home is the Village of Skokie and various neighborhood shopping uses. Southeast of the subject property, on the east side of Skokie Boulevard is a beauty salon, a garden house and a dairy bar. South of these establishments are various commercial uses in the Village of Skokie.

Plaintiff desires to demolish the existing gasoline station on the subject property and construct a new building which would house both a service station and car washing facilities. Under plaintiff's plan, up to sixty-five automobiles could be stored on the site while waiting to be washed, without any vehicles being located on the approaches to the station or on Skokie Boulevard itself. Pursuant to the provisions of the Wilmette Zoning Ordinance, plaintiff applied for a rezoning of the entire tract to a "C" Commercial District classification and concurrently applied for a special use permit to allow the establishment of an automobile laundry. After a hearing, the Village Zoning Board of Appeals recommended to the Village President and Board of Trustees that the property be rezoned and a special use permit granted. However, the President and Board of Trustees subsequently denied the request for rezoning and a special use permit. Plaintiff then brought the matter to the Circuit Court of Cook County.

At trial, three employees of the plaintiff, two engineers, two zoning consultants and a real estate broker testified as to the size, the shape and the present and proposed uses of the subject property. Salvatore A. Santoro, a real estate representative for Sinclair, testified that in his

opinion the need for an automobile laundry in the area is "definitely evident" even though there is a car wash on Skokie Boulevard, one and one-tenth miles to the south. Mr. Santoro testified that Skokie Boulevard is an extremely busy highway; that he expects 150 cars per day will use the service station if there is a car wash, double the number that presently use the station; that both Skokie Boulevard and Glenview Road are divided by yellow lines which will preclude the cross cutting of traffic into the car wash; that the gas station was built before the single family residences; and that it was impossible to acquire additional land to straighten out the boundaries of the subject property.

Richard Koeller, operation manager of the Chicago District of Sinclair, testified that traffic will enter the proposed car wash either from Skokie Boulevard or Old Glenview Road and then proceed north on the property 300 to 350 feet where it will make a "U" turn and return south some 350 to 400 feet to a point where it will enter the car wash building. Mr. Koeller also testified that a retaining wall and a six-foot screening fence will separate the automobile laundry from the abutting single family residences.

William F. Riley, real estate manager for the Chicago District of Sinclair, testified that in his opinion the colonial design of the new building will not be detrimental to the surrounding residential uses; landscaping on the northern portion of the site should benefit the surrounding residential uses; the noise level should be negligble; and the improvement should increase the valuation of commercial properties in the area.

Richard Mankey, a real estate broker, testified that in his opinion it would be economically unwise to construct townhouse units on the parcel; that the value of the property as presently zoned is $108,000, whereas the value under the proposed use would be $380,000; that a car wash would be the highest and best use of the property and would have no depreciatory effect on the surrounding area.

George Kranenberg, a zoning consultant, testified that in his opinion the only uses that can be developed on the subject property are those relating to services or uses of an open air nature. He believed that the proposed use is consistent with good planning for safe traffic flow but admitted the car wash would have some detrimental effect on the adjacent single family residences.

John Scapin, Civil Engineer for the Village, testified that Skokie Boulevard is not predominantly commercial in the Village of Wilmette and that plaintiff could develop a nine townhouse unit on the R-3 portion of the subject property. Mr. Scapin testified that although existence of the proposed car wash would not significantly increase the actual

volume of traffic on Skokie Boulevard, it would increase the number of turning movements on the boulevard and cause possible overloading of the storage facility with a consequent backup of traffic onto the boulevard. Furthermore, under plaintiff's plan, cars waiting to be washed would be lined up in a northbound double line facing southbound traffic on Skokie Boulevard. This arrangement would create traffic confusion and be a definite safety hazard especially after sunset.

Carl Gardner, a city planning and zoning consultant testified he developed a specific report on the Skokie Boulevard area for the Village and submitted it to the Village in March, 1968. The report recommended that all sizeable vacant parcels of land along either side of Skokie Boulevard be rezoned to R-3 permitting townhouses, two family units and single family units. Mr. Gardner stated that in his opinion the highest and best use of the property would be the development of R-3 townhouses. In his opinion the proposed automobile laundry would not be the highest and best use. A car wash would be an intrusion into a very well-developed, stable and well maintained single family residential area. It would have a deleterious effect on the adjoining residences from car fumes and the noise of dozens of cars starting and stopping. Mr. Gardner could not say what the effect would be on the dollar value of the area, but added it would be substantial in terms of livability. It was for this reason, in his opinion, the Village put the proposed use in its lowest category of zoning.

William Alroth, traffic engineer for the Village of Skokie, testified that a car wash operation on the subject property would significantly increase the number of turning movements at the intersection and at the entrances to the facility. Mr. Alroth anticipated there would be five times as many cars turning into the car wash as for a conventional gas station with a high probability that the accident rate would increase.

■■ The essential question on this appeal is whether the trial court utilized the proper criteria in determining whether plaintiff failed to overcome presumption of validity attaching to the zoning ordinance. The great bulk of cases reiterate the familiar zoning rules that the burden is upon the person attacking the validity of the ordinance to establish by clear and affirmative evidence that the ordinance is arbitrary; that the courts should not overrule the municipal authorities where the reasonableness of the classification is debatable; and that the validity of each zoning ordinance must be determined on its own facts and circumstances. *Elmhurst National Bank v. City of Chicago* (1961), 22 Ill.2d 396, 176 N.E.2d 771.

■■ In determining the reasonableness of zoning ordinances the cases have enumerated as relevant criteria the extent to which the value of

the subject property is diminished by restrictions (*Dalkoff v. City of Rock Island* (1959), 17 Ill.2d 342, 161 N.E.2d 292); the extent to which the removal of the restriction would depreciate the value of other property in the area (*Liberty National Bank v. City of Chicago* (1956), 10 Ill.2d 137, 139 N.E.2d 235); the suitability of the subject property for the zoned purpose (*Myers v. City of Elmhurst* (1958), 12 Ill.2d 537, 544, 147 N.E.2d 300); the existing uses and zoning of nearby and surrounding property (*La Salle National Bank v. City of Chicago* (1954), 4 Ill.2d 253, 256, 122 N.E.2d 519); and the extent to which the ordinance promotes the health, safety, morals or general welfare of the public.

■■ We have carefully reviewed the record and find the trial court utilized improper criteria in determining whether plaintiff sustained its burden. The trial court based its finding on the fact that Skokie Boulevard is a very heavily travelled thoroughfare; that the service station was built before the abutting single family residences; and that the Village zoning authorities were, in its opinion, legislating car washes out of business. We believe these considerations are subordinate to such criteria as the Village's comprehensive plan for Skokie Boulevard; the predominant character of the boulevard in the Village; and the effect of the proposed use on the abutting uses as well as traffic safety and the public welfare.

■■ In light of the criteria set forth by the Illinois Supreme Court, plaintiff has not shown by clear and affirmative evidence that the ordinance has diminished the value of the subject property to the extent that it is confiscatory. The fact that the subject property may be more valuable if zoned for an automobile laundry use is not decisive, as this fact exists in nearly every case where the intensity with which the property may be used is restrained by zoning laws. (*First National Bank v. County of Lake* (1955), 7 Ill.2d 213, 130 N.E.2d 267.) Plaintiff can develop a nine townhouse unit on the R-3 portion of the property and maintain the existing service station use on the southern portion of the property.

On the issues of extent to which the removal of the restriction would depreciate the value of the property in the area, there was considerable testimony even from one of plaintiff's witnesses that removal of the R-3 restriction and development of an automobile laundry would significantly depreciate the value of the abutting single family residences. One witness emphasized that the proposed use would depreciate not only the dollar value of the abutting residential property, but would especially decrease the livability of the well-developed single family residential area by reason of gas fumes and the noise of dozens of cars stopping and starting.

■■ Even though Skokie Boulevard is a heavily travelled street, it is not predominately commercial in the Village of Wilmette. The 1968 report on the development of the Skokie Boulevard area in the Village recommended townhouse development on the boulevard as a buffer to the single family residences off the street. In the instant case, 14 single family residence lots abut the subject property. The property directly across from the subject property on Skokie Boulevard is non-commercial and zoned R-3 for townhouse development. (See *Mangel v. Village of Wilmette, supra.*) These existing uses and the zoning of nearby and surrounding property militate against the development of the proposed use. Coupled with these considerations are the opinions of engineers and a city planner that the increased number of automobiles turning and especially the position of the cars on the subject property facing northbound with their lights on in the evening would create a traffic hazard and be detrimental to the public safety and welfare. The R-3 restriction on the subject property has a reasonable basis in the public safety and welfare. We find plaintiff failed to overcome the presumption of validity attaching to the zoning ordinance and that the finding of the trial court is against the manifest weight of the evidence. We also find that the denial of a special use permit bears a "real and substantial relation to the public health, safety, morals or general welfare." *Pioneer Trust and Savings Bank v. County of McHenry* (1968), 41 Ill.2d 77, 241 N.E.2d 454; *Columbus Park Cong. v. Board of Appeals of Chicago* (1962), 25 Ill.2d 65, 71, 182 N.E.2d 722.

Consequently, the trial court erred in holding the ordinance unconstitutional as applied to plaintiff's property, and its decree is hereby reversed and the cause remanded with directions to dismiss the complaint.

Because of our decision on the merits in this case, we need not consider whether the trial court properly denied the petition of the intervening owners of the abutting single family residences for a change of venue. (Appeal No. 54230).

Reversed and remanded with directions.

BURMAN and DIERINGER, JJ., concur.